UNITED STATES v. MUTUAL SUPPLY CO.

**No. 7578.**—Invoices dated Yokohama, Japan, August 31, 1939, etc.
Certified September 1, 1939, etc.
Entered at San Francisco, Calif., September 21, 1939, etc.
Entry Nos. 2810; 3358; 2381.

Second Division, Appellate Term

(Decided April 21, 1948)

*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector* and *Daniel I. Auster,* special attorneys), for the appellant.
*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the appellee.

Before TILSON, KINCHELOE, and EKWALL, Judges; EKWALL, J., dissenting

TILSON, Judge: This case covers two applications filed by the Government seeking review of the decision and judgment of the lower

court reported in Reap. Dec. 6809 as to appeal No. 134781–A, and of the decision and judgment of the lower court reported in Reap. Dec. 6808 as to appeals Nos. 126627–A and 130413–A only. The merchandise consists of hokkigai clams in cans containing 4½ and 9 ounces, respectively. The merchandise covered by appeal No. 134781–A was entered at San Francisco on September 21, 1939; that covered by appeal No. 130413–A was entered on September 17, 1938, and that covered by appeal No. 126627–A was entered on September 22, 1937.

Appraisement of the merchandise was made on the basis of the American selling price, as provided in section 402 (g) of the Tariff Act of 1930, by virtue of a Presidential proclamation dated May 1, 1934, and reported in T. D. 47031. The legality of the proceedings before the Tariff Commission under section 336 of the Tariff Act of 1930 and the subsequent proclamation of the President are not in issue here. The said proclamation makes it clear that after 30 days from the date thereof duty upon imported "* * * clams other than razor clams * * * packed in air-tight containers * * *" was to be assessed upon the basis of the American selling price of "* * * clams other than razor clams * * * packed in airtight containers, manufactured or produced in the United States."

In making his appraisement on the basis of American selling price, the appraiser selected as the article which was like or similar to the imported merchandise, a whole butter clam packed by Guy P. Halferty & Co., Seattle, Wash.

It appears from the decision of the trial court that it was definitely of the opinion that unless there was a domestic clam which, at the time of the exportation of the imported clam, fulfilled all the statutory requirements, there could be no American selling price applicable to the imported clam. This is made abundantly clear from the following quotation from the decision of the lower court (Reap. Dec. 6809):

* * * There is no question but that the imported merchandise consists of clams other than razor clams, packed in airtight containers. Hence, at first glance, it would seem to come within the purview of the proclamation making mandatory assessment on the basis of American selling price and upon no other basis. Reflection, however, leads to the conclusion that in order that the terms of the Presidential proclamation might apply to the assessment of duty on imported canned clams, it was necessary that *at the time of exportation of the imported clams* the conditions of the American selling price formula be satisfied by a domestic article like or similar to the imported article. If there was no domestic article fulfilling those statutory terms, then there could be no American selling price to apply to the imported article.

In view of the conclusion we have reached, it is not necessary that we either approve or disapprove the above holding of the trial court, and we therefore express no opinion as to the soundness of the above holding. We would merely observe in passing, however, that a holding of such import might well be supported by some authorities.

On the question of there not being a domestic article like or similar to the imported article, at the time of exportation of the imported article, which fulfilled the American selling price formula, upon the record before us, we reach a conclusion different from that reached by the trial court.

In dealing with the question of similarity, the trial court stated that if there was a rule to be derived from the many decisions of this court and our appellate court, "* * * it is that expressed by the Court of Customs and Patent Appeals in the case of *Scharf Bros. Co. (Inc.)* v. *United States*, 16 Ct. Cust. Appls. 347, T. D. 43089, wherein it was said":

* * * This court has long recognized the difficulty in making a hard and fast definition for the word "similar" which will always be a safe guide to customrs officials in determining value. * * *

In the case of *United States* v. *Wecker*, 16 Ct. Cust. Appls. 220, our appellate court laid down what appears to us to be a practicable and workable test or rule for use in cases involving the question of similarity, such as the present case, as follows:

* * * The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article, notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but, for all utilitarian purposes, one is a substitute for the other. It is in this sense, we believe, that the word similar was used in said section 402 (b).

We perceive of no reason why a different construction should be given to or placed upon the word "similar" as used in section 336 of the Tariff Act of 1930 than was given to the same term as used in section 402 (b) by our appellate court in the *Wecker* case, *supra*.

Counsel for both parties offered the testimony of a number of witnesses, and in view of the size of the record we shall not attempt any detailed statement of the testimony of each witness. On the question of the similarity of the imported merchandise to the domestic merchandise, witnesses on both sides testified in substance that there are two species of the hokkigai clam known as the Spisula Voyi and Spisula Alaskne which are common to the North Pacific and are sometimes found in the waters off the State of Washington; that the hokkigai clam has very much the same type of foot as the whole butter clam that is common to the Puget Sound area; that the whole butter clam is the same in character and description as the hokkigai clam; the taste of the two clams is somewhat different, the hokkigai clam having a little stronger taste than the whole butter clam.

As to the texture of the two clams, aside from the difference in the feet, the remainder of the portions are very much alike. "The physical characteristics are obviously the pink color that characterizes the foot of the Spisula as contrasted with the cream or gray color of the foot of the butter clam"; that the physical characteristics of the two clams are very similar. "From a trade standpoint there is very little difference." "I don't think there is any difference" between the hokkigai clam and the Sportsman, the latter being the whole butter clam; that the two are comparatively identical. "When you get them in a clam chowder [the Sportsman and the hokkigai], and that is the way they are used, I don't believe anybody can tell the difference." The whole butter clam looks like the hokkigai clam. "I believe that hokki compares very favorably with the brands I pack under the 'Sportsman' label, on account of the color." "Well, I would say that in my opinion our first grade, our select butter clams are similar to the hokki clam." "I would say that they are both clean." "The consumers look, curiously enough, first for color, and then for cleanliness, and last of all, strange as it may seem, look for taste." "They are built alike." "The shape is the same. Naturally, this color is a little darker."

X Q. Tell me, from your experience, * * * over a great number of years, packing, canning, and selling clams of various kinds and the knowledge acquired therefrom, during those years, * * * would you say that the hokki clam is similar and competitive to the whole butter clam as sold by the Bugges and Mr. Guilford, and the northwest whole butter clam?—A. Yes.

*     *     *     *     *     *     *

Q. Do you know the purpose for which the whole butters and the hokki clams are used?

*     *     *     *     *     *     *

A. Yes.
Q. How did you acquire that knowledge?—A. By observation and experience.
Q. Have you seen them used?—A. Yes.
Q. Can you tell us what the uses are for the hokki and the whole butter clams?—A. Principally for making clam chowder where mass meals are served.
Q. Both are used for the same purpose?—A. Yes, for the same identical purpose.

Mr. Guy P. Halferty, a witness for appellee, and one of the principal dealers in canned clams on the Pacific coast, upon being interrogated by the court, stated:

The hokki clam is very much of the nature, so far as canned products go, as the butter clam. I don't see where it could make much difference. In classification of canned clams in the trade, one would go for the other.

*     *     *     *     *     *     *

The shape is similar.

The same witness, when questioned by counsel for appellee, testified "* * * that the hokki is competitive with butter clams. It

doesn't make any difference whether they are substandard or select; they are still competitive insofar as their use is concerned."

The record contains much evidence, other than that summarized above, tending to establish the similarity of the hokkigai clam and the whole butter clam, which it is not necessary for us to detail here.

In reaching our conclusion in this case, we have not overlooked or failed to give consideration and weight to much testimony in the record tending to show that the hokkigai clam and the whole butter clam are not like or similar; that the whole butter clam was never sold in Japanese stores; and that the Japanese people ate only the Japanese clam, whether it be the hokkigai clam or some other species. Under the facts and circumstances of this case, we do not consider too seriously the two latter factors.

Upon a full consideration of the entire record, we are satisfied that, notwithstanding the fact that the price, the methods of construction, and the component materials in the hokkigai clam may be somewhat different from those same elements appearing in the whole butter clam, for all utilitarian purposes one is a substitute for the other; the two will perform the same functions, are capable of the same use, and may be substituted, one for the other.

In its decision the trial court stated that:

Government counsel in the brief filed on behalf of the defendant stated that it is a universally known fact that "clams are clams," arguing that all clams are similar and differ only in degree of excellence. It is also well known that clams are usually bought by the trade and by consumers under names which indicate source or variety, such as "cherrystone," "little neck," etc., demonstrating thereby that elements of preferability or desirability, doubtless with reference to flavor and appearance, are connected with each such name.

While the statements contained in the above quotation may be correct, there is no evidence in this record to that effect, nor does it demonstrate that if a prospective customer enters a store seeking to purchase cherrystone clams and finds there are none, but that little-neck clams which will perform the same functions, are capable of the same use, and may be substituted for cherrystone clams, are available, that the customer would refuse to buy the little neck clams simply because they were not cherrystone clams.

During the trial of the appeals involved herein, considerable evidence was offered by both sides in an effort to establish the correct American selling price. Upon reaching the conclusion that the two clams were not like or similar, the trial court properly disregarded this evidence. In view of the conclusion we have reached herein that the hokkigai clam is like or similar to the whole butter clam, it now becomes necessary that such evidence be considered and weighed with a view to arriving at the correct American selling price for the imported clams. The decisions and judgments of the trial court are accordingly

reversed, and the case remanded to the trial court for the purposes hereinbefore indicated.

During oral argument counsel for appellee made the following statement:

\* \* \* You will find Mr. Halferty, the leader of this clam industry, talking about the hokkigai and saying, "It looks like baby diaper material."; quoting again, "It looks like hell."; quoting him again, "It is a sloppy mess." Those are the characterizations of these domestic packers—of that domestic packer, which is in this record on *identical merchandise,* \* \* \*. [Italics ours.]

Mr. Halferty's own testimony is the best refutation of the statements contained in the above quotation, and in this connection it should be stated that Mr. Halferty was appearing as a witness for appellee. Mr. Halferty's testimony on this point follows:

A. Yes. We have handled in years gone by, when they first came in, Japanese clams, a few of the Japanese clams, not very many.

X Q. What type of Japanese clams?—A. As I recall, what they called the white clam, the baby clam. I don't think we had anything to do with the hokki clam. Yes, we had a few, I think, during a time. That was early when they began coming in here.

\*　　\*　　\*　　\*　　\*　　\*　　\*

X Q. Tell us when you sold those various Japanese clams, approximately what years?—A. It can only be a guess. I would judge we sold them, what we handled, it must have been around 1929 and 1930, somewhere along that period. That is a guess.

X Q. In 1934 to 1938, did you order, or did you sell, Japanese clams of any kind?—A. No. It was during that period that they came to me and worked on me for three months to take over the promotion of the Japanese clams.

\*　　\*　　\*　　\*　　\*　　\*　　\*

R. Q. Mr. Halferty, did I understand you to say you sold hokki clams during 1929 and 1930?

\*　　\*　　\*　　\*　　\*　　\*　　\*

A. I can't say. I say I can't recall when and what quantity we sold.

\*　　\*　　\*　　\*　　\*　　\*　　\*

R. Q. When did you sell any, if you did?—A. I don't remember. I just don't remember. I know they were. We had some clams here in the fresh, frozen, state. I can't remember whether they were hokki clams or white clams.

R. Q. They were from Japan?—A. Yes.

R. Q. Is that the article you were *talking about?*—A. No. *I am talking about canned clams.* I don't just recall the dates though. I know I got them in, but I can't remember when it was.

R. Q. Do you know where you got them from? \* \* \* A. I got them from a Japanese, Eimi Tuscamoa.

\*　　\*　　\*　　\*　　\*　　\*　　\*

R. Q. Could it have been as far back as 1920?—A. Time goes pretty fast. I don't know.

R. Q. What was the appearance of the article you bought when you opened up the can?—A. I could not see any particular difference. It was a pretty sloppy mess.

\*　　\*　　\*　　\*　　\*　　\*　　\*

R. Q. Try to describe them.—A. I will tell you that some of them looked like from any baby diaper material.

R. Q. Will you describe their color?—A. It was pretty tasty meat, but it looked like hell.

\*     \*     \*     \*     \*     \*     \*

R. Q. I am trying to find out the appearance of the clams that you bought and that you referred to as hokkis. Will you give us your answer to that, please?—A. Let me answer that question this way. I do not say definitely I bought hokki clams. It is my recollection; I am not sure. We had hokki clams, white clams, and baby clams, which was their classification. I am not sure to what extent we handled hokki clams. I know we handled baby and white clams; I am positive. But to what extent we handled the hokki clams, I don't know.

\*     \*     \*     \*     \*     \*     \*

R. Q. Mr. Halferty, I want you to describe the article you bought as a hokki clam. You say you bought them?—A. I do not say for sure. I can't remember if we handled them. I think we did.

\*     \*     \*     \*     \*     \*     \*

By Judge Dallinger:

Q. Did you see any hokki clams in 1935, 1936, and 1937?—A. Yes, I would say yes I have.

Q Will you describe those clams, the hokki clams you saw. What did they look like? You said they were similar to American clams. Please describe them.—A. The hokki clam is very much of the nature, so far as canned products go, as the butter clam. I don't see where it could make much difference. In classification of canned clams in the trade, one would go for the other.

Upon a full consideration of the record before us, we find as facts:

1. That the imported merchandise consists of canned clams known as hokkigai clams.

2. That the imported canned clams were exported from Japan and entry thereof made at the port of San Francisco during the month of September in the years 1937, 1938, and 1939.

3. That these canned clams were appraised on the basis of the American selling price, as provided in section 402 (g) of the Tariff Act of 1930.

4. That the American clam that was selected by the appraiser as being like or similar to the imported clam was a whole butter clam handled by Guy P. Halferty & Co. of Seattle, Wash.

5. That the imported hokkigai clam and the whole butter clam handled by Guy P. Halferty & Co. of Seattle, Wash., are in fact like or similar within the meaning of that term as used in section 336 of the Tariff Act of 1930.

As matter of law the decisions and judgments of the trial court are reversed, and the case remanded to the trial court for the purpose of considering and weighing the evidence with a view to arriving at the correct American selling price for the imported hokkigai canned clams. Judgment will be rendered accordingly.

DISSENTING OPINION

.EKWALL, Judge: I am unable to agree with my colleagues that the imported clams are similar to domestic canned clams. I think the reasoning of the decisions of the trial court on the question of similarity and the conclusion therein reached that these canned clams before us are not such as are contemplated in the Presidential proclamation (T. D. 47031) is convincing. I refer particularly to that portion in Reap. Dec. 6809 reading as follows:

> It is my view that in comparing two foodstuffs, particularly those which may be classed as delicacies, peculiarities of taste, odor, and appearance are extremely important and have a vital bearing on the value of each of the items in question. I am satisfied that the difference between the imported hokkigai and the domestic whole butter clams are so significant as to preclude a finding of similarity for the purposes of the application of the Presidential proclamation and the provisions of section 402 (g).

On the record and in view of the stipulation of counsel:

> * * * that the invoice value of the merchandise covered by the appeal, namely, the canned clams, represents the export value as defined in Section 402, and that there was not a higher foreign value for such or similar merchandise at the time of exportation.

It is my opinion that export value as defined in section 402 (d) of the Tariff Act of 1930 is the proper basis of value for this merchandise and that such export values are the invoice unit prices.

For the foregoing reasons I think the decisions of the trial court should be affirmed.