(A. R. D. 74)

HOYT, SHEPSTON & SCIARONI *v.* UNITED STATES

Entry No. 4881.

Second Division, Appellate Term

(Decided May 21, 1957)

*Lawrence & Tuttle (George R. Tuttle* and *George R. Tuttle, Jr.*) for the appellant.
*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the appellee.

Before RAO, OLIVER, and MOLLISON, Judges

RAO, Judge: This is an application for review of a decision and judgment affirming the appraised value of an importation of canned clams from Japan. (36 Cust. Ct. 580, Reap. Dec. 8587.) Both the entered value of $12.75 per case of 4 dozen 10-ounce tins, less discount of 1½ per centum, and the appraised value of $5 per dozen tins, packed, less 1½ per centum, were predicated upon the basis of American selling price, as that value is defined in section 402 (g) of the Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938.

It is conceded that American selling price is, in fact, the proper basis of value for this importation, by reason of a Presidential proclamation so decreeing, dated May 1, 1934, 65 Treas. Dec. 736, T. D. 47031, promulgated after an investigation by the United States Tariff Commission conducted pursuant to the provisions of section 336 of the Tariff Act of 1930.

The cited tariff provisions, effective as of the time of this importation, and said proclamation, insofar as here pertinent, read as follows:

SEC. 336.  EQUALIZATION OF COSTS OF PRODUCTION.

(a)  CHANGE OF CLASSIFICATION OR DUTIES.—In order to put into force and effect the policy of Congress by this Act intended, the commission * * * shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article.   In the course of the investigation the commission shall hold hearings and give reasonable public notice thereof, and shall afford reasonable opportunity for parties interested to be present, to produce evidence, and to be heard at such hearings.   The commission is authorized to adopt such reasonable procedure and rules and regulations as it deems necessary to execute its functions under this section.   The commission shall report to the President the results of the investigation and its findings with respect to such differences in costs of production.   If the commission finds it shown by the investigation that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic article and the like or similar foreign article when produced in the principal competing country, the commission shall specify in its report such increases or decreases in rates of duty expressly fixed by statute (including any necessary change in classification) as it finds shown by the investigation to be necessary to equalize such differences.   In no case shall the total increase or decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute.

(b)  CHANGE TO AMERICAN SELLING PRICE.—If the commission finds upon any such investigation that such differences can not be equalized by proceeding as hereinbefore provided, it shall so state in its report to the President and shall specify therein such ad valorem rates of duty based upon the American selling price (as defined in section 402 (g)) of the domestic article, as it finds shown by the investigation to be necessary to equalize such differences.   In no case shall the total decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute, and no such rate shall be increased.

(c)  PROCLAMATION BY THE PRESIDENT.—The President shall by proclamation approve the rates of duty and changes in classification and in basis of value specified in any report of the commission under this section, if in his judgment such rates of duty and changes are shown by such investigation of the commission to be necessary to equalize such differences in costs of production.

*        *        *        *        *        *        *

(g)  PROHIBITION AGAINST TRANSFERS FROM THE FREE LIST TO THE DUTIABLE LIST OR FROM THE DUTIABLE LIST TO THE FREE LIST.—Nothing in this section shall be construed to authorize a transfer of an article from the dutiable list to the free list or from the free list to the dutiable list, nor a change in form of duty. * * *

(h)  DEFINITIONS.—For the purpose of this section—

(1) The term "domestic article" means an article wholly or in part the growth or product of the United States; and the term "foreign article" means an article wholly or in part the growth or product of a foreign country.

\*    \*    \*    \*    \*    \*    \*

SEC. 402. VALUE [as amended].

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

[T. D. 47031].

Whereas under and by virtue of section 336 of title III, part II, of the act of Congress approved June 17, 1930 (46 Stat. 590, 701), entitled "AN ACT To provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor, and for other purposes", the United States Tariff Commission has investigated the differences in costs of production of, and all other facts and conditions enumerated in said section with respect to, clams, packed in air-tight containers, being wholly or in part the growth or product of the United States and of and with respect to like or similar articles wholly or in part the growth or product of the principal competing countries;

\*    \*    \*    \*    \*    \*    \*

Now, therefore, I, Franklin D. Roosevelt, President of the United States of America, do hereby approve and proclaim a decrease in the rate of duty expressly fixed in paragraph 721 (b) of title I of said act on razor clams (siliqua patula), packed in air-tight containers, from 35 per centum ad valorem to 23 per centum ad valorem; and assessment of the rate of 35 per centum ad valorem expressly fixed in said paragraph, title, and act on clams other than razor clams, and clams in combination with other substances (except clam chowder), packed in air-tight containers, upon the American selling price, as defined in section 402 (g) of said act, of clams other than razor clams, and clams in combination with other substances (except clam chowder), packed in air-tight containers, manufactured or produced in the United States.

At the trial, the examiner of this class of merchandise testified that the article selected as the basis for finding American selling price was the B & M soft clam, packed in 10½-ounce cans by Burnham and Morrill, and that the principal market for said B & M canned clams was Portland, Maine. Samples of the imported canned clams, and of the B & M soft clam, were introduced into evidence as plaintiff's exhibits 1, 1-A, and 2, respectively.

The parties thereupon entered into the following stipulation:

\* \* \* That the merchandise involved herein consists of clams packed in air-tight containers, cans, weighing with their contents 10 ounces each; said clams

being a product of Japan, being packed in Japan, and being commonly known in the United States as baby clams.

2. In accordance with the proclamation of the President dated May 1, 1934, T. D. 47031, said merchandise was appraised upon the basis of the American Selling Price, Section 402 (g), Tariff Act of 1930, of a clam commonly known as a soft shell clam, the product of New England, and which was packed in Portland, Maine, in airtight containers, the cans weighing with their contents 10 ounces each; said American selling price being $20 for four dozen cans.

3. On the date of exportation there were several types of canned clams other than the soft clam of New England, as referred to in paragraph 2, which were packed and offered for sale in the United States, and that among these being baby clams packed in California in airtight containers, cans, weighing with their contents 10 ounces each, and having a value as defined in Section 402 (g), of $12.75 for four dozen cans, these being a product of Japan, having been previously imported into the United States in bulk and in a frozen condition, and thereafter packed as is described above.

Further, that these baby clams were identical with the imported clams referred to in paragraph 1, *supra*.

4. If the court concludes that the New England soft clam referred to in paragraph 2 was properly used as a basis of appraisement, the dutiable value is the appraised value, and if the court concludes that the baby clam referred to in paragraph 3 is the proper basis for appraisement, the dutiable value is $12.75 for four dozen cans.

It is appellant's ultimate contention here, as it was before the trial court, that the appraiser erred in selecting the New England-canned clam as the article whose American selling price formed the basis of the return of value of the merchandise at bar. Upon the theory that the California-packed clam was an article manufactured or produced in the United States, within the contemplation of section 402 (g), as amended, *supra*, more closely resembling the instant importation—in fact, identical with it—than the New England-canned soft clam, hence, "like" rather than "similar" to the importation, it is urged that the appraiser should have found a value based upon the American selling price of the California-canned Japanese baby clams, previously imported.

Much of the argument advanced by appellant is, and was, addressed to the question of whether the process of canning clams constitutes a manufacture or production, within the meaning of said section 402 (g), so as to support a finding of an American selling price for the article thus brought into being in California. And, in the opinion of the trial court, this was indeed the primary issue in the case. Relying upon the principle expressed in the case of *United States* v. *Samuel Dunkel & Co., Inc.*, 33 C. C. P. A. (Customs) 60, C. A. D. 317, to the effect that a mere change in shape or form—as where bulk butter is converted into print butter and tinned—does not constitute a manufacture or production, the trial court held that imported frozen bulk

clams, packed in airtight containers in the United States, were not manufactured or produced in the United States, and, therefore, could not have an American selling price, as defined in section 402 (g). Accordingly, it was held unnecessary to consider the secondary issue of which of several articles, manufactured or produced in the United States and otherwise meeting the requirements of said section 402 (g), should be selected in determining American selling price.

We are constrained to disagree with this approach to the problem here presented. In view of the stipulation of the parties, in which it was expressly conceded that Japanese baby clams, packed in airtight containers in California, had a value, as defined in section 402 (g), on the date of exportation of the merchandise at bar, of $12.75 for 4 dozen cans, we are of opinion that the question of whether or not such canned clams were manufactured or produced in the United States is academic. For the purposes of this case, it must be taken as established that Japanese clams, canned in California, had an American selling price, at the time with which we are here concerned, and that price was $12.75 for 4 dozen cans. We regard this stipulation as binding upon the court. *Smith & Nichols (Inc.)* v. *United States*, 18 C. C. P. A. (Customs) 16, T. D. 43974; *Pacific Trading Co.* v. *United States*, 19 C. C. P. A. (Customs) 361, T. D. 45508; *A. H. Smith & Co.* v. *United States*, 59 Treas. Dec. 703, T. D. 44746. Furthermore, when, at the time of oral argument of this review, the full implications of the stipulated facts were called to the attention of counsel for appellee, he did not withdraw the concession. Instead, although asserting that the fact was not material, he acknowledged that there were two American articles, one being the clams, canned in California, the other, the clams, canned in New England.

We consider, therefore, that the California-canned clams were an article, manufactured or produced in the United States, within the contemplation of section 402 (g), as amended, and that the question of alternative selection is the only issue here presented for determination.

On this phase of the case, we deem it pertinent first to observe that said section 402 (g) provides the elements for ascertaining American selling price, without specific reference to any particular item, class, or kind of merchandise, other than that it shall be the price of any article, manufactured or produced in the United States. By the very nature of its terms, and, except for certain instances relating to coal-tar products not here relevant, its dependence upon the operation of the procedures outlined in section 336, *supra*, for its application, such generality is, of course, dictated. The appraiser invokes the provisions of section 402 (g), when he is directed by Presidential proclama-

tion to do so, in respect to whatever merchandise is encompassed in the executive decree. It is the proclamation which describes the merchandise required to be appraised upon the basis of American selling price. It is the appraiser who carries out the terms of the proclamation by finding an American selling price.

When, as here, the proclamation is couched in general terms, to wit, "clams * * *, and clams in combination with other substances * * *, packed in air-tight containers," it is not to be supposed that the appraiser may select any canned clam or clam product which may happen to have an American selling price, without regard to its comparability with the imported merchandise. Some degree of identity would necessarily seem to be required, and the courts have so interpreted the American selling price provision in its relationship with· section 336, *supra*, and any proclamation issued in accordance therewith.

In the case of *Japan Import Co.* v. *United States*, 24 C. C. P. A. (Customs) 167, T. D. 48642, our appellate court, in considering the value of certain imported shoes, commonly known as sneakers, appraised on the basis of American selling price, by virtue of a Presidential proclamation, found it appropriate to inquire into the question of whether or not the record contained substantial evidence of the finding "that the imported and the domestic articles were like or similar." It was there stated:

Under the proclamation of the President and said section 336 (a) and (b), the appraisement of the imported goods was to be made at the American selling price of the domestic article like or similar to imported foreign articles, as defined by said section 402 (g). Were the imported goods like or similar to the goods used by the appraiser in ascertaining value? The word "like" has been defined by us in *American Foundation (Inc.)* v. *United States*, 19 C. C. P. A. (Customs) 36, T. D. 44872, by the adoption of the definition of the word, as taken from Webster's New International Dictionary, 1925, as follows:

> Having the same, or nearly the same, appearance, qualities, or characteristics; similar.

*       *       *       *       *       *       *

The word "similar" has had frequent attention on the part of this court. We first gave it extended attention in *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714. The words involved in the statute there in issue were "such" or "similar." We reiterated our former conclusion that the word "such" meant "identical," and as to the word "similar," referred to the definition given in Webster's New International Dictionary (1925), as follows:

> *Similar.* a. 1. Nearly corresponding; resembling in many respects; somewhat like; bearing a general likeness.

Similarly, in the case of *Mutual Supply Co.* (*H. H. MacDonaugh & Co.*) v. *United States*, 22 Cust. Ct. 446, Reap. Dec. 7701, affirmed, *H. H. MacDonaugh & Co., The Mutual Supply Co.* v. *United States*, 38 C. C. P. A. (Customs) 36, C. A. D. 436, it was observed:

With respect to the contention that the cost of production of the MK 659 and BK 659 shoes was not investigated by the Tariff Commission, appellant points out in its brief that section 402 (g), in itself, does not direct that imported merchandise shall be appraised at the American selling price of a like or similar domestic article but that reference must be had to section 336 for authority to appraise upon the basis of a like or similar article. With this contention we are in accord since said section merely defines those elements which constitute an American selling price; * * *.

So, also, in *United States* v. *Mutual Supply Co.*, 20 Cust. Ct. 418, Reap. Dec. 7578, affirmed, *Mutual Supply Co.* v. *United States*, 38 C. C. P. A. (Customs) 44, C. A. D. 437, involving the American selling price of canned clams, appraised on that basis, by virtue of T. D. 47031, *supra*, the decision turned on the issue of whether the imported article was like or similar to the domestic article.

Clearly, if the application of. the provisions of sections 402 (g) did not rest upon the existence of a domestic article like or similar to the imported product, there would have been no occasion for the courts in said cases to have engaged in any attempt to resolve that fact. That they have done so, patently indicates a construction of the American selling price provision which requires such an inquiry.

Moreover, we consider this to be the only reasonable and logical means by which the provisions of said section 402 (g) can be implemented. To suggest any other course, doubtless would result either in an inability to carry out the terms of the section or in the absurd situation of applying a value of one commodity to that of a totally different article, simply because they both fall within the same general class description.

Since, as we have observed, appraisement, on the basis of American selling price derives from a Presidential proclamation in the first instance, we look to that document for evidence of its scope. The final paragraph, which proclaims the change in basis of valuation, is predicated upon recitals detailing the action of the United States Tariff Commission in conducting an investigation, and in reporting the results thereof, with respect to "the differences in costs of production of, and all other facts and conditions enumerated in said section with respect to, clams, packed in air-tight containers, being wholly or in part the growth or product of the United States and of and with respect to like or similar articles wholly or in part the growth or product of the principal competing countries." Whereas it is by now well established that the exercise of the President's judgment in proclaiming a change in rate or basis of valuation is not the subject of judicial review (*United States* v. *George S. Bush & Co., Inc.*, 310 U. S. 371), we are of opinion that his actions may be read in the light of his own explanations of the reasons which impelled him to take them. Construing the proclamation as a whole, we have no hesitation in

holding that it relates to domestic canned clams, like or similar to imported canned clams, and to no other.

It is not here contended that the New England-canned clam, whose American selling price was adopted by the appraiser as the basis of value for the merchandise at bar, was a dissimilar article. On the contrary, similarity is, in fact, conceded. What appellant here urges is that the California-canned product is a like article and that a *like* article should be preferred to a *similar* article in finding American selling price.

Counsel for the Government argues in effect that, if the appraiser has acted on the basis of a similar article, there is no provision of law which authorizes the substitution of a more similar article in the place of the one the appraiser has selected.

As we have interpreted section 402 (g), it requires the appraiser to make a return of value on the basis of a domestic article like or similar to the imported product, and we are of opinion that he must first explore the presence of a like article before choosing a similar one. In view of the definitions, hereinabove quoted, the word "like" imports a greater degree of identity than the word "similar." It seems obvious that a closer basis of comparison and, therefore, of competitiveness, exists between two like articles than between two similar articles, and that, with respect to like articles, the price of one more nearly reflects the price of the other, than would be so in the case of two similar articles.

For much the same reasons which have impelled our courts to draw a distinction between "such" and "similar," as applied to the other bases of value defined in section 402 of the Tariff Act of 1930, and to resort to a consideration of "such" merchandise, before attempting to ascertain the value of "similar" merchandise, we are inclined to distinguish like merchandise from similar merchandise in the case of American selling price. *United States* v. *Irving Massin & Bros., supra; Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. (Customs) 36, T. D. 43324; *Wedemeyer* v. *United States*, 25 Cust. Ct. 360, Reap. Dec. 7854.

The stipulation of the parties establishes that the Japanese baby clams, canned in California, were identical with the merchandise at bar. It follows that these two commodities fall within the description of "like articles" and that the appraisement should have been made upon the basis of the California-canned clams, consisting of Japanese baby clams imported, in bulk, and in a frozen condition, and thereafter packed in airtight containers, at the rate of $12.75 for 4 dozen cans.

Nothing which has been said herein was intended to convey any expression of opinion with respect to a situation wherein it is claimed that one concededly similar article is *more* similar than another con-

cededly similar article. We are not here concerned with comparative similarity and do not undertake to state any views in connection therewith.

Upon the foregoing considerations, we make the following findings of fact:

1. That the merchandise covered by this appeal for reappraisement consists of clams packed in airtight containers, weighing with their contents 10 ounces each, the clams being a product of Japan and commonly known in the United States as baby clams.

2. That the merchandise was appraised on the basis of American selling price, as provided in section 402 (g) of the Tariff Act of 1930, as amended by section 8 of the Customs Administrative Act of 1938, by virtue of a Presidential proclamation, dated May 1, 1934, and reported in 65 Treas. Dec. 736, T. D. 47031, with reference to a softshell clam, the product of New England, packed in Portland, Maine, in airtight containers, weighing with their contents 10 ounces each, at $20 for 4 dozen cans.

3. That, on or about the date of exportation, there was an American selling price, as defined in said section 402 (g), as amended, for Japanese baby clams previously imported in bulk and in a frozen condition, and packed in airtight containers in California, weighing with their contents 10 ounces each, which price was $12.75 for 4 dozen cans.

4. That said California-canned clams were domestic articles so like the imported canned clams as to be characterized as identical therewith.

The court, therefore, concludes that—

1. The proper basis of appraisement of the merchandise covered by this appeal is American selling price, as defined in section 402 (g), as amended, *supra*.

2. Such American selling price was $12.75 for 4 dozen cans.

3. The judgment of the trial court is, therefore, reversed.

Judgment will be entered accordingly.