(A.R.D. 153)

ALBERT F. MAURER CO. *v.* UNITED STATES

Entry No. 13418.

First Division, Appellate Term

(Decided April 1, 1963)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the appellant.
*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the appellee.
*Lamb & Lerch* (*David A. Golden* of counsel) as *amicus curiae*.

Before OLIVER and WILSON, Judges

WILSON, Judge: This is an application for review of the decision of the trial judge, sitting in reappraisement, reported in 47 Cust. Ct. 560, Reap. Dec. 10130. The merchandise involved consists of natural rubber overshoes (plaintiff's illustrative exhibit 2), known as "Galocha Moderna," exported from Brazil on November 29, 1958, and entered at the port of Philadelphia.

The trial court sustained the action of the appraiser in holding the merchandise subject to appraisement upon the basis of American selling price, as defined in section 402(g) of the Tariff Act of 1930, as amended, under the authority of the Presidential proclamation set forth in 63 Treas. Dec. 232, T.D. 46158, of a "like or similar" American overshoe (plaintiff's illustrative exhibit 3), produced by the Tingley Rubber Co. of Rahway, N.J. The appraised value was $1.71 per pair, less 2 per centum, packed.

The importer herein claims the correct dutiable value of the involved merchandise was $1.25 per pair, packed, upon the basis of export value, as defined in section 402(d) of the Tariff Act of 1930. The parties to this controversy have agreed that, if the court should find that the imported overshoes are not properly subject to appraisement upon the basis of American selling price, then, in that event, the

claimed export value, as noted, *supra*, represents the correct dutiable value of the involved merchandise.

Appellant's counsel, in this case, makes several contentions on so-called constitutional grounds, viz, that there is here involved "a unique patented article" and "that patented article, had never been before the Tariff Commission for investigation and the Tariff Commission had never investigated cost factors relating to overshoes from Brazil" (oral argument, page 3) ; secondly, that there has been no investigation in Brazil of the cost factors relating to the so-called "Galocha Moderna" shoe or similar articles and that, accordingly, "the President has usurped the constitutional functions of the Congress by placing an American selling price value on articles which did not fall within the limited delegation of authority given by Congress to the President" (oral argument, page 5) ; thirdly, that "if this court holds that the President did not usurp congressional functions and that the Congress did give the right to the President under 336 to apply an American selling price value on an article for which he did not investigate the cost factors, then we claim that this delegation of authority by the Congress was an unconstitutional delegation of authority" (oral argument, page 5) ; and, lastly, on the merits, appellant contends that there is no American selling price for the "Galocha Moderna" shoe, because no "like or similar" Galocha Moderna has been produced in the United States (oral argument, page 7).

The trial court, in its decision, succinctly set forth the legislative history of section 336 of the Tariff Act of 1930, with which we are here concerned, and, in discussing predecessor section 315 of the Tariff Act of 1922, stated, page 565, as follows:

Section 315 of the Tariff Act of 1922 (predecessor of present section 336) was different from section 336 in at least two respects relevant to this litigation. First, the investigation antecedent to a Presidential proclamation was, under the 1922 act, to be an investigation of "differences in costs of production of articles wholly or in part the growth or product of the United States and of like or similar articles wholly or in part the growth or product of *competing foreign countries* . . . ." [Emphasis supplied.] Second, both the increased duty rates that could be applied without invoking American selling price as the basis of appraisement (subdivision (a) of section 315), and the ad valorem duty rates that could be applied on valuation at American selling price (subdivision (b) of section 315), were to be levied, collected, and paid on articles when imported from any foreign country. [Italics quoted.]

The court thereupon went into the question of what Congress intended when it substituted for the flexible tariff provisions of the Tariff Act of 1922 the relevant provisions that are found in the Tariff Act of 1930. In this connection, the trial court, page 566, observed:

It is legislative history that the Tariff Act of 1930 was enacted only after protracted hearings, amendments in the committee bill by the House itself, by the Senate committee, and on the Senate floor. The two bills went to conference. The flexible tariff provisions were not free of controversy and contention.

Briefly summed up, section 336, in the form in which it was enacted into law, appeared for the first time in the conference report (H. Rept. No. 1893, 72 Congressional Record 10737, at p. 10741). There were substantial changes from both the House and Senate bills in section 336 as the conferees recommended that section to their respective Houses.

The report of the conference managers for the House quite fully states what the conferees intended. Under the amended section, so the report states, the new investigation procedure (fully outlined) would culminate in a report of the Tariff Commission to the President; and then the report proceeds as follows:

> The President shall by proclamation approve the rates of duty and the changes in classification or in the basis of value specified in the report of the commission, if in his judgment such rates and changes are shown by the investigation of the commission to be necessary to equalize the differences in cost of production. The President may not modify a rate, classification, or basis of value so specified by the commission. If the President adjudges that such specified rates or charges are not so shown to be necessary to equalize such differences, he is not required to act upon the commission's report, and the specified rates or changes do not take effect. On the other hand, if the President makes a proclamation approving the rates or changes specified by the commission, *they will take effect* commencing 30 days after the date of such proclamation and will supersede the rates, classifications, or bases of value then fixed by law *with respect to the articles covered by the proclamation when imported from any foreign country* into the United States or into any of its possessions except the Philippine Islands, the Virgin Islands, American Samoa, and the island of Guam. [72 Congressional Record, at p. 10745.] [Emphasis added.] [Italics quoted.]

Both the House and Senate accepted the conference report in respect of section 336, voted the proposed section without further amendment, and it became law by the President's signature.

## The trial court, in its decision, thereupon concluded:

From the foregoing, and from other proceedings of the Congress and committees in connection with section 336, it is clear that the unwieldy and delaying provision of the Tariff Act of 1922, requiring investigation as to articles produced in the *competing countries*, without limitation, was simplified in the Tariff Act of 1930 so as to require investigation only as to conditions in the *principal competing country;* but that, once rate changes or change in basis of valuation had been proclaimed by the President, such changes were to be applicable across the board, that is, for the articles whatever the country of export might be. That this was the intention is further fortified by the broad language of section 1, which provides:

> Except as otherwise specially provided for in this chapter, there shall be levied, collected, and paid upon all *articles when imported from any foreign country* . . . [19 U.S.C. § 1001]. [Emphasis added.]

The court is cited to no language providing "otherwise" in respect of the flexible tariff authority, save only section 336 itself. (Section 350(a), later discussed, is not relevant to this issue.) Certainly section 336 contains no limiting language such as that for which plaintiff argues; and the conference report makes it clear that adjustments in rates, and in the basis on which rates were to be computed, when proclaimed by the President, were not limited to the products of any single country or of specified countries. [Italics quoted.]

The aforesaid history of the flexible provisions of the tariff act persuades us that, as found by the trial court, it was not the intention of Congress, in enacting section 336 of the Tariff Act of 1930, to require that there be a multiplicity of investigations, separately for every country for which flexible tariff adjustment was proclaimed; that, on the contrary, Congress intended to provide that only one investigation would be necessary, namely, in the principal competing country; and that, predicated on this single investigation, rate adjustments, when proclaimed by the President, would be applicable to all imported articles, whatever their country of export. Accordingly, we find, as did the trial court, that rubber footwear, imported from Brazil, was included under Presidential proclamation, T.D. 46158, and that Congress intended such merchandise to be so included.

A proclamation of the President, made under the authority of section 336 of the Tariff Act of 1930, is as binding as an act of Congress, and its provisions are not subject to review by the courts. *United States* v. *George S. Bush & Co., Inc.*, 310 U.S. 371. The merchandise involved in the *Bush* case was canned clams, imported from Japan. Appraisement therein was made on the basis of the American selling price of a domestic product found like or similar to that which was imported, pursuant to a proclamation issued by the President. Mr. Justice Douglas, delivering the opinion of the Court in the *Bush* case, *supra*, pages 379–380, stated:

\* \* \* And the judgment of the President that on the facts, adduced in pursuance of the procedure prescribed by Congress, a change of rate is necessary is no more subject to judicial review under this statutory scheme than if Congress itself had exercised that judgment. \* \* \*

For the judiciary to probe the reasoning which underlies this Proclamation would amount to a clear invasion of the legislative and executive domains. Under the Constitution it is exclusively for Congress, or those to whom it delegates authority, to determine what tariffs shall be imposed. Here the President acted in full conformity with the statute. \* \* \*

The involved merchandise consists of footwear, composed of materials in chief value of rubber. In the case at bar, the Tariff Commission, pursuant to the provision of section 336, *supra*, made an investigation as to the differences in the cost of production of merchandise of the character here involved and merchandise "like" or "similar" to that imported. It found that the duties expressly fixed by statute did not equalize the differences in the costs of production of the domestic article and the "like" or "similar" foreign article, and, as a result of such investigation, the Commission made recommendation and report to the President who, acting in conformity with the statute, thereupon issued a proclamation imposing new duties upon merchandise of the type here imported. Accordingly, the judgment of the President in the latter respect, as indicated by the

opinion of the Court in the *Bush* case, *supra*, is not subject to judicial review.

Appellant herein further contends that the appraiser did not value the imported rubber footwear from Brazil on the basis of an American article which is "like" or "similar" to the imported merchandise and that there is no domestic article which is like or similar to the imported article.

Our appellate court has, in previous cases, set forth certain standards for determining similarity for purposes of valuation under the American selling price formula. In the case of *Mutual Supply Co.* v. *United States*, 38 CCPA 44, C.A.D. 437, the merchandise involved was "hokkigai" clams, imported from Japan, which were appraised on the basis of the American selling price of domestic whole butter clams put up by packers on the Pacific coast. The record disclosed that the physical appearance of the imported clam and the domestic article was very similar, with the exception that the foot of the hokkigai clam was pink in color, whereas the foot of the domestic butter clam was cream or gray in color; that the two clams differed in taste and odor; that the whole butter clam was never sold in Japanese stores; and that the Japanese people ate only the Japanese clam. The trial court (*Mutual Supply Co.* v. *United States*, 18 Cust. Ct. 338, 343–344, Reap. Dec. 6809) held that "the differences between the imported hokkigai and the domestic whole butter clams are so significant as to preclude a finding of similarity," noting, in the latter connection, "that in comparing two foodstuffs * * * peculiarities of taste, odor, and appearance are extremely important and have a vital bearing on the value of each of the items in question." However, our appellate term of this court reversed the trial judge (*United States* v. *Mutual Supply Co.*, 20 Cust. Ct. 418, Reap. Dec. 7578), holding both clams to be "similar" for appraisement purposes. In so holding, the second division, appellate term of this court, stated:

In the case of *United States* v. *Wecker*, 16 Ct. Cust. Appls. 220, our appellate court laid down what appears to us to be a practicable and workable test or rule for use in cases involving the question of similarity, such as the present case, as follows:

* * * The question of similarity is, in each case, to be measured by much the same homely rule that applies to the prospective customer who enters a store seeking some utilitarian article of a certain specified name and style; he finds the article requested is not in stock but that another article, of approximately the same price and which will perform the same functions, is capable of the same use and may be substituted therefor, is available. Such an article is a similar article, notwithstanding the price, the methods of construction, and the component materials may be somewhat different; but, for all utilitarian purposes, one is a substitute for the other. It is in this sense, we believe, that the word similar was used in said section 402(b).

We perceive of no reason why a different construction should be given to or placed upon the word "similar" as used in section 336 of the Tariff Act of 1930 than was given to the same term as used in section 402(b) by our appellate court in the *Wecker* case, *supra*.

The court, in the *Mutual Supply Co.* case, *supra* (20 Cust. Ct. 418), at page 422, then concluded:

In reaching our conclusion in this case, we have not overlooked or failed to give consideration and weight to much testimony in the record tending to show that the hokkigai clam and the whole butter clam are not like or similar; that the whole butter clam was never sold in Japanese stores; and that the Japanese people ate only the Japanese clam, whether it be the hokkigai clam or some other species. Under the facts and circumstances of this case, we do not consider too seriously the two latter factors.

Upon a full consideration of the entire record, we are satisfied that, notwithstanding the fact that the price, the methods of construction, and the component materials in the hokkigai clam may be somewhat different from those same elements appearing in the whole butter clam, for all utilitarian purposes one is a substitute for the other; the two will perform the same functions, are capable of the same use, and may be substituted, one for the other.

Our appellate court (38 CCPA 44, C.A.D. 437) sustained the holding of the appellate term above noted, citing with approval in its decision the language above cited.

In *Geo. S. Bush & Co., Inc.* v. *United States*, 43 Cust. Ct. 577, Reap. Dec. 9563 (affirmed in *Id.* v. *Id.*, 46 Cust. Ct. 754, A.R.D. 126), the court, at page 582, stated:

All that is required for a valid appraisement of imported merchandise on the basis of American selling price is that the domestic article or articles upon which appraisement is predicated be "like or similar" to the goods imported. If the merchandise used by the appraiser for valuation purposes meets that test, then, the appraiser's action must be upheld. Whether or not one domestic article is "more" similar to an imported article than another domestic article used as the basis of appraisement must, of course, be determined by the record in each particular case. Of course, if there is such a disparity between the domestic article used as the basis of appraisement and the imported goods so as to render the designation "similar" inapplicable to the domestic article, then, the appraiser's action in using such domestic article for valuation purposes on the basis of American selling price is improper. * * *

Other cases dealing with the question of "similarity" for appraisement purposes under the American selling price formula, as cited by the trial court in its decision, have been carefully reviewed by us. All of these set forth standards of similarity for appraisement under American selling price valuation substantially the same as those set forth in the *Mutual Supply Co.* and *Geo. S. Bush & Co., Inc.*, cases, *supra*.

In the case at bar, it appears that both the imported rubber articles and the domestic overshoes, upon which appraisement was predicated on the basis of American selling price, have in common similarity of material, namely, india rubber. It further appears that both articles

are adapted to the same use, viz, as rubbers or overshoes. In these two respects, at least, the test of similarity, as disclosed by the interpretation outlined by the court in the *Mutual Supply Co.* case, *supra*, has been met. While it also appears that there are substantial differences in the construction of the two articles here under consideration, as set forth by the trial court, nevertheless, there is nothing in this record which establishes that the two articles are not competitive or commercially interchangeable, as claimed by the importer herein. Accordingly, the presumption that the "Galocha" article and the domestic Tingley rubber are commercially interchangeable and competitive has not been overcome by any evidentiary facts adduced on the part of the importer. The testimony of appellant's witnesses to the effect that the two articles are not commercially interchangeable, unsupported by facts establishing that the one rubber article would not be accepted as a substitute for the other in the trade, is a mere conclusion on their part and, accordingly, insufficient to overcome the finding by the appraiser as to the similarity of the two articles in question.

Based upon the foregoing considerations, we are of opinion that the trial judge properly held that the importer herein has failed to sustain its burden of overcoming the presumptively correct appraised value and of establishing affirmatively the value claimed by the appellant. The trial court's findings of fact and conclusions of law are herein adopted, with the same force and effect as if restated, and its judgment is affirmed.

Judgment will be entered accordingly.