ACADEMY BROADWAY CORP., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Consol. Ct. No. 81-2-00155

Before CARMAN, *Judge.*

(Decided February 5, 1985)

*Norman Katz, Esq.* (Norman Katz on the motion) for the plaintiff.
*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Jerry P. Wiskin* on the motion) for the defendant.

CARMAN, *Judge:* Plaintiff has brought this action contesting the basis of appraisement used by the United States Customs Service (Customs) to value plaintiff's imported merchandise, certain rubberized, waterproof, hip-high wader boots.[1] The articles were entered at the Port of New York on December 15, 1975, and were classified under item 700.60 of the 1975 Tariff Schedules of the United States (TSUS).[2] The matter is before the Court on cross-motions for summary judgment.

---

[1] The case of *Academy Broadway Corp.* v. *United States,* No. 80-1-00220, has been consolidated with the instant matter for all purposes. The issues of law involved in both cases are identical. The merchandise involved in Court No. 80-1-00220 consists of chest-high, rather than hip-high, waders.

[2] Plaintiff's complaint also challenged Customs' classification of the merchandise. Plaintiff, however, has abandoned all classification claims and stipulates that only the basis of appraisement is at issue herein. Item 700.60 of the TSUS provides:

Footwear (whether or not described elsewhere in this subpart) which is over 50 percent by weight of rubber or plastics or over 50 percent by weight of fibers and rubber or plastics with at least 10 percent by weight being rubber or plastics:

\*      \*      \*      \*      \*      \*      \*

Other footwear (except footwear having uppers of which over 50 percent of the exterior surface area is leather):

\*      \*      \*      \*      \*      \*      \*

Other ........................................................................................................20% ad val.

Upon entry, plaintiff's merchandise was appraised on the basis of the American Selling Price (ASP), a valuation methodology formerly found at 19 U.S.C. § 1402(a)(4) (1976) (repealed 1979). Plaintiff claims that appraisement is proper under 19 U.S.C. § 1402(a)(1) (1976) (repealed 1979), at invoice unit values, f.o.b., port of shipment, as entered.

## BACKGROUND

The former section 1402(g) of 19 U.S.C. defined the ASP as follows:

> The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

The ASP basis of appraisement was applicable to a limited number of goods, including coal-tar and benzenoid products, certain canned clams, footwear, if the rubber portion was over 50 percent by weight, and certain wool-knit gloves. 1 R. Sturm, *Customs Law & Administration* § 44.1 (1982). The ASP applied to most of these categories of articles through Presidential Proclamations issued pursuant to section 336 of the Tariff Act of 1930, 19 U.S.C. § 1336 (1976), *amended by* 19 U.S.C. § 1336 (Supp. IV 1980) (the flexible tariff provision). *See* 1 R. Sturm, *supra.* The flexible tariff provision, a form of protection for American manufacturers that equalizes costs of production, provided administrative authority to achieve production cost equalization between domestic and foreign products by adjusting the basis of valuation of imports to the ASP upon which ad valorem duty rates were then based. *See Albert F. Maurer Co.* v. *United States,* 47 Cust. Ct. 560, 565 (1961), *aff'd,* 50 Cust. Ct. 539 (1963), *aff'd,* 51 CCPA 114 (1964).

The ASP basis of valuation, however, was repealed by provisions of the Trade Agreements Act of 1979, Pub. L. No. 96–39, § § 201–225, 93 Stat. 144, 194–236 (codified at 19 U.S.C. § 1401a (1982)). Provisions for ASP valuations contained in the flexible tariff provision were similarly repealed. *See* 19 U.S.C. § 1336(b) (1976) (repealed 1979). Repeal of these controversial ASP provisions was required in order to implement acceptance by the United States of the Customs Valuation Agreement at the Tokyo Round of Multilateral Trade Negotiations. *See* H.R. Rep. No. 317, 96th Cong., 1st Sess. 1, 88 (1979). The imports at issue in the instant matter were entered in 1975,

before the effective date of the Trade Agreements Act. The merchandise is therefore subject to pre-Trade Agreements Act valuation bases.

The parties have agreed that the imported merchandise is classifiable under TSUS item 700.60. It is also agreed that the merchandise is on the "Final List" published by the Secretary of the Treasury, *see* Treas. Dec. 54,521, 93 Treas. Dec. 14, 50 (1958), and therefore subject to appraisement in accordance with 19 U.S.C. § 1402 (1976) (repealed 1979). Beyond these preliminaries, it is plaintiff's contention that the imported merchandise is not subject to ASP appraisement pursuant to 19 U.S.C. § 1402(a)(4) as a matter of law. To succeed, plaintiff must overcome the presumption of correctness attaching to Customs' decision. *See* 28 U.S.C. § 2639(a)(1) (1982).

## OPINION

Headnote 3(b) of Schedule 7, Part 1, Subpart A provides:

> Subject to the provisions of section 336(f) of this Act, the merchandise in item 700.60 shall be subject to duty upon the basis of the American selling price, as defined in section 402 or 402a of this Act, of like or similar articles manufactured or produced in the United States.

Plaintiff's initial hurdle is obvious from the headnote above. The footwear at issue is conceded to be classifiable under item 700.60, TSUS. The headnote clearly states that any article so classifiable shall be dutiable on the ASP valuation basis. Plaintiff, however, seeks to circumvent the operation of the headnote by tracing the tariff classification history of hip-high waders.

The analysis begins with Presidential Proclamation 2027, Treas. Dec. 46,158, 63 Treas. Dec. 232 (1933), issued by Herbert Hoover in February of 1933. After an investigation conducted under the flexible tariff provisions, the United States Tariff Commission determined that relative costs of production between American and foreign manufacturers should be equalized. The Proclamation, relating to certain boots, shoes, and other footwear states in part:

> Whereas the commission has found it shown by said investigation that the principal competing countries for boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber, provided for in paragraph 1530(e) of Title I of said tariff act, are Czechoslovakia and Japan, and that the principal competing country for boots, shoes, or other footwear, wholly or in chief value of india rubber provided for in paragraph 1537(b) of Title I of said act, is Czechoslovakia, and that the duties expressly fixed by statue do not equalize the differences in the costs of production of the domestic articles and the like or

similar foreign articles when produced in said principal competing countries;

\*       \*       \*       \*       \*       \*       \*

Now, therefore, I, Herbert Hoover, President of the United States of America, do hereby approve said report and proclaim that the rate of duty shown by said investigation to be necessary to equalize such differences, within the limit provided in said section 336, on boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber, is 35 per centum ad valorem based upon the American selling price as defined in section 402(g) of said act of boots, shoes or other footwear [described as above] \* \* \* manufactured or produced in the United States; and that the rate of duty shown by said investigation to be necessary to equalize such differences within the limit provided in said section 336, on boots, shoes, or other footwear, wholly or in chief value of india rubber, not specially provided for, is 25 per centum ad valorem based upon the American selling price of boots, shoes, or other footwear, wholly or in chief value of india rubber, not specially provided for, manufactured or produce in the United States.

63 Treas. Dec. at 233–34. Plaintiff admits that its imported merchandise was originally subject to the Proclamation and therefore dutiable on an ASP basis. Plaintiff goes on to contend, however, that Congress removed the merchandise from the effect of the Proclamation by means of the Tariff Schedules Technical Amendments Act of 1965, Pub. L. No. 89–241, § 57(a), 79 Stat. 933 (repealed 1979). It is true that waterproof footwear wholly or over 50 percent by weight natural rubber and whose exterior surface is over 90 percent rubber or plastics, classifiable under item 700.50, was removed from Headnote 3(b) and the requirement of ASP valuation. *ID.*[3] But Congress took this action only to ensure that waterproof footwear consisting of natural rubber receive the same treatment under the TSUS as footwear consisting of synthetic rubber. S. Rep. No. 530, 89th Cong., 1st Sess. 15–25 (1965). Although the Senate originally proposed expanding ASP treatment to cover synthetic rubber footwear, *id.* at 20; *see* H.R. 7969, 89th Cong., 1st Sess. § 59 (1965) (attachment to S. Rep. No. 530), the final legislation withdrew waterproof footwear from ASP treatment altogether and increased the rate of duty for natural and synthetic rubber waterproof footwear from 12ffi1/2ffi percent to 37ffi1/2ffi percent. Technical Amendments Act § 57(a). Subsequent to the enactment of the Technical Amendments Act, all of the products originally the subject

---

[3] Schedule 7, part 1, subpart A was also amended by striking out item 700.50 and inserting in its lieu items 700.51, 700.52 and 700.53. Technical Amendments Act § 57(b).

of Proclamation 2027 were to continue to receive substantial tariff protection—either through ASP valuation or a higher rate of duty. *See* 111 Cong. Rec. 23,534 (1965).

The bifurcated approach to item 700.60 of the TSUS suggested by plaintiff is entirely unnecessary in this case. Plaintiff founds this argument on the initial language of Headnote 3(b), namely: "Subject to the provisions of section 336(f) of this Act." Plaintiff asserts that this language implies that merchandise must be subject to a valid and subsisting Presidential Proclamation before ASP treatment applies, and because waterproof footwear has been removed from the effect of any such proclamation, plaintiff's waterproof waders cannot receive ASP treatment. But plaintiff has stipulated that its waders are classifiable under item 700.60, not item 700.50 which was the provision actually removed from ASP treatment by Congress. Prior to the TSUS, Presidential Proclamation 2027 applied not only to waterproof footwear classified under section 1537(b) of the Tariff Act of 1930, but also to other types of rubber footwear classified under section 1530(e). Regardless of whether plaintiff's waders are waterproof type footwear, they were clearly subject to Presidential Proclamation 2027. Headnote 3(b) carries forward the operation of the Proclamation and clearly requires that ASP treatment applies to merchandise under item 700.60. The obvious meaning of the initial language of Headnote 3(b) is that the President retains authority under 19 U.S.C. § 1336(f) to modify or terminate ASP treatment with respect to rubber footwear. Extrinsic aids in arriving at the legislative intent need not be employed since the headnote is utterly "devoid of doubt or ambiguity." *Sandoz Chemical Works, Inc.* v. *United States.* 50 CCPA 31, 33 (1963). In any event, the Court finds it unnecessary to consider the effect of the initial language of the headnote in the hypothetical situation where merchandise never had been subject to a Presidential Proclamation.

Plaintiff has amply demonstrated that ASP valuation applies to merchandise only through a specific statutory enactment or through a Presidential Proclamation issued pursuant to the flexible tariff provision. Plaintiff also makes clear that Customs was not given the authority to enlarge the class of merchandise subject to a Presidential Proclamation. What plaintiff has not done, however, is show that its imported merchandise, admittedly subject to Proclamation 2027, was removed from such consideration. The lack of merit in plaintiff's position is particularly emphasized when juxtaposed with the rule that articles of the same class or kind as those covered by a section 336 investigation and proclamation will come under the Proclamation regardless of whether the particular brand was then in existence. *See Albert F. Maurer Co.* v. *United States,* 51 CCPA 114, 120–21 (1964).

In short, Congress, when it adopted Headnote 3(b) of Schedule 7, Part 1, Subpart A, unequivocally stated its intention that imported merchandise classifiable under item 700.60 of the TSUS was to be

appraised on an ASP basis. Plaintiff's theorizing has served to muddy the waters on this clear statement regarding merchandise that was originally covered by a Presidential Proclamation issued pursuant to section 336 of the Tariff Act of 1930. The argument forwards a misconception that the merchandise is not subject to Presidential Proclamation 2027.

Further, plaintiff's argument, if accepted, would result in a substantial repeal of Headnote 3(b) by exempting all waterproof footwear classifiable under item 700.60 from ASP valuation. Such repeals by implication are not favored. *United States* v. *Borden Co.,* 308 U.S. 188, 198 (1939). It must be remembered that rubber waterproof footwear escaping ASP valuation normally would be assessed a higher rate of duty under item 700.53 of the TSUS. Accordingly, the Court rejects plaintiff's arguments.

### Conclusion

Plaintiff has failed to overcome the presumption of correctness attaching to Customs' appraisement decision. The merchandise was appraised on an ASP basis in accordance with the plain and unequivocal meaning of Headnote 3(b), Schedule 7, Part 1, Subpart A of the TSUS. There appearing to be no genuine issues of material fact, summary judgment is appropriate. In light of the above, therefore, plaintiff's motion for summary judgment is denied; defendant's cross-motion for summary judgment is granted.

Judgment accordingly.