MUTUAL SUPPLY CO. *v.* UNITED STATES

No. 5745.—Invoice dated Osaka, Japan, March 15, 1939.
Certified March 17, 1939.
Entered at San Francisco, Calif., April 18, 1939.
Entry No. 9865.

(Decided October 23, 1942)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*James F. Donnelly* and *Samuel D. Spector*, special attorneys), for the defendant.
*Lamb & Lerch* (*David A. Golden* of counsel) *amici curiae.*

DALLINGER, Judge: This appeal to reappraisement involves the proper value of certain rubber-soled canvas shoes, balmoral type, imported from Japan and entered at the port of San Francisco on April 18, 1939. The merchandise was invoiced at 12.24 yen per dozen pair, packing included, and was entered under the so-called duress provisions of section 489 on the basis of the American selling price at $1.20 for the sizes 4 and 5 and at $1.296 for sizes 6 and 7. The merchandise was appraised at the values as entered. The appraiser's action was based on section 402 (g) of the Tariff Act of 1930 predicated on a Presidential proclamation dated February 1, 1933, T. D. 46158, 63 Treas. Dec. 232.

The plaintiff contends that the proper basis for value is export value; and that the imported shoe is not "like or similar" to the domestic shoe on which the American selling price is based.

The Government claims that like or similar American merchandise was sold in the United States at the appraised values.

The issue involved herein was previously the subject of a decision rendered by Cline, J., on December 6, 1940, in *Mutual Supply Co.* v. *United States* (5 Cust. Ct. 614, Reap. Dec. 5062), not appealed, the record in which has been incorporated herein. Judge Cline, in the *Mutual Supply* case, *supra,* gave an extensive outline of the testimony in that case and it is unnecessary to restate it here.

Counsel for the parties stipulated that the invoiced value represents the export value and that there was no higher foreign value, such stipulation to be effective only in the event that the American selling price is declared to be null and void.

The first witness called by the plaintiff in the present case was Sasumu Togasaki, vice president of the Mutual Supply Co., who also testified in the previous case. He identified samples of imported shoes which were received in evidence as collective illustrative exhibit A as representative of the smaller sizes and collective illustrative exhibit B as representative of the larger sizes.

Plaintiff's next witness, Kirk M. Johnson, who also testified in the previous case, testified that he was the examiner at San Francisco who passed on the instant merchandise; that he had been the examiner at the port of San Francisco of such line of merchandise for 10 or 11 years; that the appraisement was based on a rubber-soled canvas shoe manufactured by the Hood Rubber Co., known as the "Gardenshu" the wholesale prices of which are the appraised values herein; and that the principal market for such merchandise is at San Francisco, Calif.

On cross-examination the witness testified that since 1930 he had been the sole examiner of Japanese rubber-soled footwear; and that previous to that time he had served as clerk to Mr. Downey who was examiner of such merchandise from 1923 to 1930.

The Government's first witness, Patrick B. Devine, testified that he is an examiner of merchandise in the office of the appraiser at San Francisco examining cotton goods and canvas; that by observation or thread count of cotton fabrics it is not possible to tell whether one of two pieces of cotton fabric is more durable and stronger than the other; and that a chemical analysis would be necessary in order to determine the type of cotton used, whether regular or short staple and how long the staple is, and it would then be necessary to determine whether it is a hard twist or a loose twist, and whether it is tightly or loosely woven.

The Government's second witness, John J. Brady, attached to the headquarters staff of the United States Rubber Co., in the footwear department as manager of products, testified that he had previously been involved in sales promotion and now acts in an advisory capacity in the designing of shoes; that it is impossible to tell from looking at collective illustrative exhibit A in the present case and collective exhibit 1 in the incorporated case, which one is more durable; that that would have to be determined by laboratory test or by actual wear test; that the two above-mentioned exhibits are similar and commercially interchangeable; that he could not tell by looking at them which has a better shank or which counters would stand up better or

of what materials or substances the counters are made. On cross-examination he admitted that he is not a technical expert.

The Government's third witness, Charles Arthur Canning, an owner of a combined shoe and shoe repairing business in Los Angeles, testified as to the market conditions of the two shoes in his shop. Inasmuch as the testimony of the examiner herein has established San Francisco to be the principal market for the involved merchandise, retail conditions in any market other than such principal market can be given little evidentiary value.

The Government's fourth witness, John H. Lewis, a salesman of the Hood Rubber Co., testified that he had seen both imported and domestic shoes displayed side by side and identified a sample of the Hood Rubber Co. "Gardenshu" which was introduced and received as collective illustrative exhibit C. He gave it as his opinion that collective illustrative exhibit A and collective illustrative exhibit C are similar because he had seen them sold to the same class of people. On cross-examination the plaintiff introduced a sample of a shoe, admitted as illustrative exhibit D, which the witness stated was similar to collective illustrative exhibit C and collective illustrative exhibit A.

The Government's fifth and last witness, C. W. Pennington, sales manager for the Pacific Coast Division, United States Rubber Co., testified that he had seen both the imported and domestic shoes displayed in the same stores but he only mentioned the name of one of such stores; that he had seen people who were engaged in farm work wearing both types of shoes on many occasions. On cross-examination he stated in recognizing shoes, color had something to do with it, especially before the shoes become very much worn. He then identified a sample of a shoe known as the United States Rubber Co.'s "Field" shoe, which was admitted as illustrative exhibit E.

Upon a careful reading of Judge Cline's opinion in the incorporated case (*Mutual Supply Co.* v. *United States*, Reap. Dec. No. 5062, 5 Cust. Ct. 614), I am convinced that the learned Judge must have based her decision, and rightly so, upon the testimony of the plaintiff's witness Thomas E. Hearty "a former examiner at the port of San Francisco having supervision of the oriental division with 25 years of experience." It appears from the record in the instant case, however, that although the said Hearty was in fact a former examiner at the port of San Francisco, as an examiner he never examined rubber-soled Japanese footwear similar to that involved herein as Kirk M. Johnson was the sole examiner of that class of merchandise at that port from 1930 to 1941 and that from 1923 to 1930 examiner Downey acted in that capacity, the said Johnson serving as his clerk. Inasmuch as the witness Hearty's only qualification in the record was the fact that he was a former examiner, manifestly he was ab-

solutely unqualified to give the detailed testimony upon which the learned Judge relied, which testimony therefore has little evidentiary value.

Upon the entire record, including a careful examination of the exhibits, I am satisfied that the imported Japanese rubber-soled canvas shoes at bar, within the meaning of the Presidential proclamation aforesaid, are like the domestic shoes selected by the appraiser on the recommendation of examiner Johnson, who was amply qualified to pass upon such merchandise, for the purpose of establishing the American selling price of the imported merchandise at bar. The imported shoes and the domestic shoes selected by the appraiser are made of similar material, are commercially interchangeable, are adapted to the same use, and are in fact competitive. (See *United States* v. *Japan Import Co., Inc.*, Reap. Dec. 4568, 2 Cust. Ct. 926.)

In the case of *Japan Import Co.* v. *United States*, 24 C. C. P. A. 167, T. D. 48642, the court in affirming the Third Division of this court, stated:

* * *. Some testimony was offered to the effect that the domestic product in some cases was of a better quality than the imported shoes; for instance, some of these domestic articles were said to have a cloth upper which permitted the passage of air, thus ventilating the shoe. The insoles were said to be closer fitting and the cross corrugations on the soles of better quality. It was also claimed that the soles of some of the domestic shoes were more flexible. The evidence, however, did show that the imported shoes and the domestic shoes were sold in the same establishments, to the same class of customers, and were adapted for the same uses and purposes. The witnesses differed to some degree as to whether they considered the imported and domestic shoes to be similar, some expressing the opinion definitely that they were similar for selling purposes, while others had the contrary opinion.

The single judge found on the evidence that the imported goods were like or similar to the domestic product used by the appraiser in ascertaining value. The third appellate division was of the same opinion after a review of the evidence.

The courts have laid down the principle that merchandise need not be "such" or "identical" for the purpose of valuation, and that the only requirement is that they be "similar."

Similarity and likeness are terms of relativity, and for the purpose of applying the American selling price definition, the degree of similarity or likeness might very well be gauged by the ratio of difference between the competitive prices of the foreign and domestic products.

After a careful study of all of the evidence and exhibits herein, including the incorporated record, I am of the opinion that the plaintiff has not established, by a preponderance of the credible evidence, that the imported and domestic shoes are not like or similar.

On the facts and the law, I therefore conclude that the American selling price, as that value is defined in section 402 (g) of the Tariff Act of 1930, is the proper basis for the determination of the value of

the merchandise here involved, and that such values are the values found by the appraiser.

Judgment will be rendered accordingly.