## MUTUAL SUPPLY CO. *v.* UNITED STATES

**No. 6086.**—Invoice dated Osaka, Japan, March 15, 1939.
Certified March 17, 1939.
Entered at San Francisco, Calif., April 18, 1939.
Entry No. 9865.

### Third Division, Appellate Term

(Decided January 18, 1945)

*Lawrence & Tuttle* (*George R. Tuttle* of counsel) for the appellant.
*Paul P. Rao*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the appellee.
*Lamb & Lerch* (*John G. Lerch* and *David A. Golden* of counsel) *amici curiae.*

Before KEEFE, EKWALL, and COLE, Judges

EKWALL, Judge: This is an appeal by the importer from a finding of value made by a single judge reported as Reap. Dec. 5745, 9 Cust. Ct. 667, on certain rubber-soled, canvas-topped shoes. The shoes were exported from Japan in March 1939. Upon entry at the port of San Francisco they were appraised on the basis of the American selling price as defined in section 402 (g) of the Tariff Act of 1930, at $1.20 per pair for sizes 4, 4½, and 5, and at $1.296 for sizes 6 and 7, packed. The American selling price was adopted by reason of the Presidential proclamation of February 1, 1933 (63 Treas. Dec. 232, T. D. 46158), issued under authority of section 336 of the Tariff Act of 1930, which proclamation changed the basis for assessment of duty on certain rubber-soled footwear from the foreign market value to the American selling price.

A hearing was held at San Francisco, Calif., at which time the record in the case of *Mutual Supply Co.* v. *United States*, Reap. Dec. 5062, 5 Cust. Ct. 614, was incorporated herein. Counsel entered into a stipulation that the invoice value correctly represents the export value in the event that the court should find the American selling price to be inapplicable to the merchandise involved. On entry the importer filed a so-called duress certificate adding to meet advances made by the appraiser in similar cases.

The respective provisions of the statute involved are set forth below as follows:

SEC. 336. EQUALIZATION OF COSTS OF PRODUCTION.

(a) CHANGE OF CLASSIFICATION OR DUTIES.—In order to put into force and effect the policy of Congress by this Act intended, the commission (1) upon request of the President, or (2) upon resolution of either or both Houses of Congress or (3) upon its own motion, or (4) when in the judgment of the commission there is good and sufficient reason therefor, upon application of any interested party, shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article. In the course of the investigation the commission shall hold hearings and give reasonable public notice thereof, and shall afford reasonable opportunity for parties interested to be present, to produce evidence, and to be heard at such hearings. The commission is authorized to adopt such reasonable procedure and rules and regulations as it deems necessary to execute its functions under this section. The commission shall report to the President the results of the investigation and its findings with respect to such differences in costs of production. If the commission finds it shown by the investigation that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic article and the like or similar foreign article when produced in the principal competing country, the commission shall specify in its report such increases or decreases in rates of duty expressly fixed by statute (including any necessary change in classification) as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total increase or decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute.

(b) CHANGE TO AMERICAN SELLING PRICE.—If the commission finds upon any such investigation that such differences can not be equalized by proceeding as

hereinbefore provided, it shall so state in its report to the President and shall specify therein such ad valorem rates of duty based upon the American selling price (as defined in section 402 (g)) of the domestic article, as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute, and no such rate shall be increased.

(c) PROCLAMATION BY THE PRESIDENT.—The President shall by proclamation approve the rates of duty and changes in classification and in basis of value specified in any report of the commission under this section, if in his judgment such rates of duty and changes are shown by such investigation of the commission to be necessary to equalize such differences in costs of production.

Sec. 402 as amended by the Customs Administrative Act of 1938 is as follows:

(g) AMERICAN SELLING PRICE.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

The Presidential proclamation is as follows:

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

WHEREAS under and by virtue of section 336 of Title III, Part II, of the act of Congress approved June 17, 1930 (46 Stat. 590, 701), entitled "An Act to provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, to protect American labor, and for other purposes," the United States Tariff Commission has investigated the differences in costs of production of, and all other facts and conditions enumerated in said section with respect to, boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon, or other synthetic textile, silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber, and boots and shoes or other footwear, wholly or in chief value of india rubber, not specially provided for, being wholly or in part the growth or product of the United States, and of and with respect to like or similar articles wholly or in part the growth or product of the principal competing countries;

WHEREAS in the course of said investigation a hearing was held, of which reasonable public notice was given and at which parties interested were given reasonable opportunity to be present, to produce evidence, and to be heard;

WHEREAS the commission has reported to the President the results of said investigation and its findings with respect to such differences in costs of production;

WHEREAS the commission has found it shown by said investigation that the principal competing countries for boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or

in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber, provided for in paragraph 1530 (e) of Title I of said tariff act, are Czechoslovakia and Japan, and that the principal competing country for boots, shoes, or other footwear, wholly or in chief value of india rubber, provided for in paragraph 1537 (b) of Title I of said act, is Czechoslovakia, and that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic articles and the like or similar foreign articles when produced in said principal competing countries; and that said differences can not be equalized by proceeding under the provisions of subdivision (a) of said section and act;

WHEREAS the commission has specified in its report the ad valorem rates of duty based upon the American selling price, as defined in section 402 (g) of said act, of the domestic articles found by the commission to be shown by said investigation to be necessary to equalize such differences; and

WHEREAS in the judgment of the President such ad valorem rates of duty based upon said American selling price are shown by such investigation of the Tariff Commission to be necessary to equalize such differences in costs of production:

Now, THEREFORE, I, HERBERT HOOVER, President of the United States of America, do hereby approve said report and proclaim that the rate of duty shown by said investigation to be necessary to equalize such differences, within the limit provided in said section 336, on boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber, is 35 per centum ad valorem based upon the American selling price as defined in section 402 (g) of said act of boots, shoes, or other footwear (including athletic or sporting boots and shoes), the uppers of which are composed wholly or in chief value of wool, cotton, ramie, animal hair, fiber, rayon or other synthetic textile, silk, or substitutes for any of the foregoing, with soles composed wholly or in chief value of india rubber or substitutes for rubber, manufactured or produced in the United States; and that the rate of duty shown by said investigation to be necessary to equalize such differences, within the limit provided in said section 336, on boots, shoes, or other footwear, wholly or in chief value of india rubber, not specially provided for, is 25 per centum ad valorem based upon the American selling price of boots, shoes, or other footwear, wholly or in chief value of india rubber, not specially provided for, manufactured or produced in the United States.

IN WITNESS WHEREOF I have hereunto set my hand and caused the seal of the United States to be affixed.

DONE at the city of Washington this 1'' day of February, in the year of our Lord nineteen hundred and thirty-three, and of the Independence of The United States of America the one hundred and fifty-seventh.

[SEAL]

HERBERT HOOVER.

By the President:
HENRY L. STIMSON,
    *Secretary of State.*

At the trial the Government examiner of this merchandise testified on behalf of the appellant that he had examined the merchandise here involved; that he had been engaged in examining this line of merchandise for 10 or 11 years·at the port of San Francisco; and that the appraisement in this instance was based upon the American selling

price of what he considered to be similar shoes manufactured by the Hood Rubber Co. He further testified that the principal market for such merchandise is at San Francisco, Calif. It was brought out on cross-examination of this witness that he had been the only examiner of Japanese rubber-soled footwear since 1930 at the port of San Francisco and that prior to that time he was clerk to the examiner of such merchandise.

Counsel for appellant also produced the testimony of a witness who identified certain samples. The record in the case of Mutual Supply Co. v. United States, supra, was thereupon received in evidence whereupon appellant rested.

The Government called five witnesses, Mr. Devine, the examiner of cotton goods at the port of entry; Mr. Brady, who was attached to the headquarters staff of the United States Rubber Co. in the footwear department, as "manager of products and policy administration"; Mr. Canning, the proprietor of a small shoe shop and shoe repair business in Los Angeles; Mr. Lewis, a rubber salesman employed by the Hood Rubber Co., and Mr. Pennington, sales manager for the Pacific Coast Division of the United States Rubber Co.

The court also had the benefit of numerous exhibits consisting of samples of the instant merchandise, together with the samples in the earlier Mutual Supply Co. case, the record in which was incorporated, and samples of the domestic shoe which the appraiser considered similar to the imported shoe.

Upon this record the judge below found that the "imported shoes and the domestic shoes selected by the appraiser are made of similar material, are commercially interchangeable, are adapted to the same use, and are in fact competitive." He further held that the importer had failed to establish that the imported and domestic shoes are not like or similar. He therefore concluded that the American selling price was the proper basis for the determination of value, and that such values were the values found by the appraiser.

This decision was predicated upon a finding that the opinion of the judge in the incorporated case must have been based upon the testimony adduced by the witness Thomas E. Hearty, who had formerly been an examiner at the port of San Francisco and who had supervision over the oriental division at that port. The decision further held that in view of testimony produced in the instant case the witness Hearty was not qualified to give the detailed testimony upon which the judge in the incorporated case relied, and that such testimony had little evidentiary value.

Appellant here assigns as error the failure on the part of the judge below to state why the testimony of appellant's witnesses in the incorporated records Wilson, Fukutome, Tambara, Togasake,

Kuwada, and Inouye "was not credible or did not constitute a preponderance of evidence that the two shoes are not (1) commercially interchangeable; (2) sold in the same stores; (3) used by the same people; (4) constructed in the same manner, in respect to flexibility; and (5) by virtue of such flexibility or lack of flexibility, adaptable to the same uses." In this connection we may state that we do not construe the wording of the statute (Sec. 501, Tariff Act of 1930) providing that the decision shall state "the facts upon which the decision is based" to require that the court must state in minute detail every element by which it was motivated in arriving at its conclusion.

The question before us for determination is, has the appellant proven that the imported shoes are not like or similar for tariff purposes to the shoes manufactured and sold by the Hood Rubber Co. known as the "Gardenshu" which the appraiser used as a basis for his appraisement? In deciding that question it must be borne in mind that in enacting section 336, *supra*, providing for a change in the basis of valuation upon merchandise where such change is found necessary to equalize differences in costs of production, Congress changed the wording used in section 402, *supra*, viz, "such or similar" to read "like or similar" thereby broadening the scope of comparability of foreign and domestic merchandise for the purposes of said section. In this connection we quote from the decision in *Japan Import Co.* v. *United States*, 69 Treas. Dec. 1444, Reap. Dec. 3825, where Judge Evans, writing the opinion, used the following language:
* * *. Counsel for the plaintiff argues in his brief:

There may be a fine difference in meaning between the words "such" or "like" but they mean substantial identity.

He cites the case of *United States* v. *Massin*, 16 Ct. Cust. Appls. 19, T. D. 42714, which interpreted the word "such" to mean "identical." From this he argues that in the instant case the imported shoes are not "like" merchandise, nor would they be "such" merchandise under section 402 (b), (c), or (d). We agree that they would not be "such" or identical merchandise but we think the question of whether they are "like" merchandise is not so easily disposed of. Counsel argues in his brief that whether these shoes are like or similar to certain domestic shoes "does not depend upon competitiveness." In support of this argument he recites the legislative history of that portion of the tariff bill which afterwards was enacted as section 336, *supra*, and points out that Congress changed the language of section 315 of the Tariff Act of 1922 and the language of subdivision (4) of section 402 of that act by eliminating any reference to *competitive* articles.

We cannot agree that Congress eliminated all reference to competitive articles, for we find in the section itself, (e) (2) (C), quoted above that in arriving at the cost of a foreign article the commission shall take into consideration, among other things, "other relevant factors that constitute an advantage or disadvantage in *competition*."

In our view Congress intended to broaden the scope of comparability of foreign and domestic merchandise by the use of the word "like" rather than "such" which is used in other parts of the statute. The term "such" as stated by

appellant, contemplates identity, whereas "like" indicates resemblance. By reference to the dictionary definitions of the latter term we find the following:

*like,* a. * * * 1. Having the same, or nearly the same, appearance, qualities, or characteristics; similar; as * * * two plants with *like* flowers; * * * 2. Specif. a. Closely resembling its original;—said of a portrait, etc.— Webster's New International Dictionary.

*like,* a. 1. Having resemblance; nearly identical in appearance or characteristics; approximate, similar * * *. 2. Almost or quite the same in the quality considered; equal or nearly equal; virtually equivalent; as, figures of like dimensions. * * *. Funk & Wagnalls New Standard Dictionary.

Therefore the investigation authorized by said section 336 is directed to the "differences in the costs of production of any domestic article and of any" foreign article which resembles or is similar to the domestic article.

The Court of Customs and Patent Appeals in affirming that decision (24 C. C. P. A. (Customs) 167, T. D. 48642) quoted the language used in the *Massin* case, *supra,* in which it elaborated on the meaning to be attached to the word "similar" as follows:

In view of the common meaning of the word "similar" and of the authorities cited, we are of opinion, and so hold, that if goods are made of approximately the same materials, are commercially interchangeable, are adapted to substantially the same uses, and are so used, ordinarily, they are similar, within the meaning of section 402 (b). The importer or foreign manufacturer may not, by making a few changes in structure, or in giving the product a new name, or by restricting its sale to the American purchaser only, *ipso facto* remove his merchandise from section 402 (b), the foreign value provision.

The Massin case, cited by Judge Evans above, was followed in *United States* v. *F. Vietor & Achelis,* 17 C. C. P. A. (Customs) 412, T. D. 43864, and was cited with approval by that court in the cases of *Charles Hardy, Inc.* v. *United States,* 21 C. C. P. A. (Customs) 173, T. D. 46509, and *United States* v. *Thomas & Co.,* ibid. 254, T. D. 46788. See also *United States* v. *R. W. Cramer & Co.,* ibid. 379, T. D. 46911; *United States* v. *The American Bluefriesveem, Inc.,* 22 C. C. P. A. (Customs) 67, T. D. 47063; and *United States* v. *Briones & Co., Inc.,* ibid. 245, T. D. 47158.

In the later case of *United States* v. *Japan Import Co., Inc.,* 2 Cust. Ct. 926, Reap. Dec. 4568, which involved the question of the similarity of certain rubber-soled footwear to certain domestic shoes, the court stated:

It is evident from a study of the authorities that the factors to be considered in determining the question of whether an imported article is like or similar to a domestic article which may be taken as the basis of appraisement under said section 336 are (1) similarity of material; (2) commercial interchangeability; (3) adaptability to the same use; and (4) competitive character.

This represents a summary of the law on this point as we understand it.

The evidence before us shows that the imported and domestic shoes here involved are made of similar materials. In the *Mutual Supply*

*Co.* case, the record in which is incorporated herein, it was held, as stated above, that the domestic shoes and the imported shoes were not like or similar. That decision appeared to rely to a great extent upon the testimony of the witness Hearty, a former examiner at the port of San Francisco who was described as "having supervision over the oriental division."

While we are unwilling to subscribe fully to the conclusion reached by the learned judge below that the witness Hearty was absolutely unqualified to give the detailed testimony upon which he determined that Judge Cline relied in arriving at the decision in the incorporated case, it is the opinion of the court that a careful consideration of the testimony of the appellant's witnesses taken in connection with that of the Government witnesses in the instant case indicates that the evidence preponderates in favor of the Government's contention that the two types of shoes are like or similar. With the exception of the witness Wilson, who testified that the two types of shoes are not commercially interchangeable, the statements of the witnesses add very little to the appellant's case. The witnesses Kuwada and Fukutome testified that they dealt only with Japanese stores that cater solely to the Japanese trade and that they had no knowledge as to other stores.

We find that the record discloses that both the domestic and imported shoes have rubber soles and canvas uppers. There is testimony that both types are sold in the same stores, to the same class of purchasers, and one witness testified that when he had none of the imported shoes in stock he sold the domestic in their place and vice versa. The use of both types is shown to be the same, that is, they are used by Japanese and Filipino truck farmers. It is the opinion of the court that the shoes are competitive, being sold to the same stores and displayed on the same shelves. They are the same in shape, in design, and practically the same in construction. Appellant points out that the presence of a strip of metal in the soles of the domestic shoe which tends to make it more rigid is an important point of dissimilarity. Similarity and likeness are terms of relativity and it is the opinion of the court that this difference is not sufficient to negative the finding of similarity made by the single judge.

Upon the record we find that the rubber-soled, canvas-topped shoes here involved are properly dutiable upon the basis of the American selling price in accordance with the Presidential proclamation (T. D. 46158) at $1.20 per pair for sizes 4, 4½, and 5, and at $1.296 for sizes 6 and 7; packing included. The judgment of the court below is affirmed.

Judgment will be rendered accordingly.