**CONVERSE RUBBER COMPANY**

v.

**UNITED STATES (Mitsubishi International Corp., Party-in-Interest).**

**R.D. 11716; Reappraisement R67/10315.**

United States Customs Court.
June 30, 1970.

Lamb & Lerch, New York City (Richard J. Kaplan and David A. Golden, New York City, of counsel), for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Morris Braverman, New York City, trial attorney), for defendant.

Lane, Young & Fox, New York City (James G. McGoldrick and William H. Fox, New York City, of counsel), for party-in-interest.

Stitt, Hemmendinger & Kennedy, Washington, D. C. (Noel Hemmendinger, Washington, D. C., of counsel), amicus curiae.

WATSON, Judge:

This is an American manufacturer's appeal for reappraisement which places in issue the appraised value of certain rubber soled tennis shoes made in Japan and exported on May 6, 1966. The merchandise was appraised on the basis of American selling price as provided for in section 402a(g) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at a unit value of $1.85 less 6 percent. Plaintiff claims that the proper appraised value should be $3.20 less 2 percent, the price of certain rubber soled tennis shoes manufactured by the B.F. Goodrich Footwear Company and the United States Rubber Company.

A number of preliminary matters have been agreed upon by the parties. First, that the imported footwear is identified on the so-called "Final List" published by the Secretary of the Treasury, T.D. 54521. Second, that American selling price as provided for in section 402a(g) of the Tariff Act of 1930, as amended, is the proper basis of appraisement. Third, that plaintiff has met all of the jurisdictional requirements necessary to filing an American manufacturer's appeal. Finally and most importantly, plaintiff has agreed that the domestic shoe chosen by the appraising official for the purpose of appraisement, is similar to the importation and meets the statutory requirements for American selling price.

In addition to the briefs of the parties, the court has been assisted by a succinct and commendable amicus brief filed by Stitt, Hemmendinger and Kennedy on behalf of the Footwear Group, American Importers Association, Japan Rubber Footwear Manufacturers Association, and Japan General Merchandise Exporters Association.

The relevant statutory provisions are as follows:

Section 336(a) of the Tariff Act of 1930, as amended:

(a) Change of classification or duties.—In order to put into force and effect the policy of Congress by this chapter intended, the commission (1) upon request of the President, or (2) upon resolution of either or both Houses of Congress, or (3) upon its own motion, or (4) when in the judgment of the commission there is good and sufficient reason therefor, upon application of any interested party, shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article. In the course of the investigation the commission shall hold hearings and give reasonable public notice thereof, and shall afford reasonable opportunity for parties interested to be present, to produce evidence, and to be heard at such hearings. The commission shall report to the President the results of the investigation and its findings with respect to such differences in costs of production. If the commission finds it shown by the investigation that the duties expressly

fixed by statute do not equalize the differences in the costs of production of the domestic article and the like or similar foreign article when produced in the principal competing country, the commission shall specify in its report such increases or decreases in rates of duty expressly fixed by statute (including any necessary change in classification) as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total increase or decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute.

(b) Change to American selling price.—If the commission finds upon any such investigation that such differences can not be equalized by proceeding as hereinbefore provided, it shall so state in its report to the President and shall specify therein such ad valorem rates of duty based upon the American selling price of the domestic article, as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute, and no such rate shall be increased.

Section 402a(g) of the Tariff Act of 1930, as amended:

(g) American selling price.—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for do-mestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

American selling price is the basis of valuation applied to a number of imported articles, most notably certain chemicals and footwear. This basis of valuation ignores the price of the imported article and turns instead to the price at which such articles of American manufacture are freely offered for sale for domestic consumption. Where applied, such method of valuation is obviously intended to provide a measure of protection to certain American industries. Albert F. Maurer Co. v. United States, 51 CCPA 114, C.A.D. 845 (1964). Considerable litigation has had as its focus the domestic articles selected by the appraising official for the purpose of determining American selling price. See for example Japan Import Co. v. United States, 86 F.2d 124, 24 CCPA 167, T.D. 48642 (1936); Albert F. Maurer Co. v. United States, *supra*; A. Zerkowitz & Co., Inc. v. United States, 62 Cust.Ct. 986, A.R.D. 250, 297 F.Supp. 350 (1969) (appeal pending).

In this case, one of the few in which an American manufacturer has taken advantage of the procedures available and challenged an *appraised value*, plaintiff has the same burdens of proof as if it were an importer undertaking an appeal for reappraisement. Accordingly, plaintiff must establish that the appraisement is erroneous and then, that the value for which it contends is correct. Arditi v. United States, 50 CCPA 49, C.A.D. 818 (1963).

As sometimes happens in these matters, what emerges here after strenuous litigation and considerable effort expended by the parties and the court, is a case which, from a legal standpoint, is not possessed of great complexity. As noted, plaintiff has, to all intents and purposes, conceded that the shoe utilized by the appraising official meets the statutory requirement necessary for an article which is to be utilized in the determination of American selling price.

Said shoe, manufactured by the Bata Shoe Company of Belcamp, Maryland, and freely offered for sale at a price of $1.85 less 6 percent, is conceded to be similar to the imported shoe. In consequence it is incumbent upon plaintiff to show that there is some other factor in the appraisement which makes it erroneous and, subsequently, some reason to give preference to the shoes said by plaintiff to be similar and utilize their American selling price.

The principal thrust of plaintiff's objections to the appraisement seems to be based on the fact that it was made pursuant to certain guidelines issued by the Secretary of the Treasury, which guidelines read as follows in 31 Federal Register 2393:

> Imported products subject to appraisement on the basis of American selling price by virtue of section 336 of the Tariff Act of 1930, as amended, are required to be appraised at the American selling price of the product manufactured in the United States which is like or similar to the imported product. Customs officers to whom the functions of appraising officers have been delegated shall have the function of selecting the product manufactured in the United States which is like or similar to such an imported product. In carrying out that function, such officers shall use all reasonable ways and means to select the product manufactured in the United States which in their opinion is like, or most similar to the import in physical characteristics, such as appearance, durability, quality, construction, workmanship, and finish. If several products manufactured in the United States are found to be approximately equal in similarity on the basis of the foregoing characteristics, the product which is closest in price to the price of the imported article shall be selected as the most similar.

Plaintiff not only claims that the use of the lowest price of a similar article is incorrect but further that a positive obligation rests on the appraising official to utilize the *highest* price of a similar article. In support of this contention plaintiff relies solely on its view regarding the intention of the legislature purportedly implicit in the use of American selling price to obtain the value of the imported merchandise.

I am of the opinion that plaintiff's contentions are without merit. Even were I to grant that the shoes offered by plaintiff are also similar to the imported shoe, a conclusion which is open to doubt, I would see no reason to disturb the actions of the appraising official.

First, the above guidelines were distributed in conformity with the powers of the Secretary of the Treasury as outlined in section 502(a) of the Tariff Act of 1930. Said provision provides that the Secretary of the Treasury "shall establish and promulgate such rules and regulations not inconsistent with the law, and may disseminate such information as may be necessary to secure a just, impartial and uniform appraisement of imported merchandise and the classification and assessment of duties thereon at the various ports of entry, * * *." Second, the views expressed in the guidelines are entirely in conformity with the statutory and case law related to American selling price. Japan Import Co. v. United States, *supra*; Mutual Supply Co. v. United States, 38 CCPA 44, C.A.D. 437 (1950); Albert F. Maurer Co. v. United States, *supra*. Third, the action of the appraiser is also entirely in conformity with the statutory language in that he is conceded to have appraised the importation on the basis of the American selling price of a similar domestic article and did not fix on price to the exclusion of all other comparative factors. Fourth, I find no support anywhere for the view that the appraising official was required, if he needed to select between a number of similar articles, to select the American article possessing the highest selling price.

It is one thing to agree that the use of American selling price is de-

signed for protective purposes. It is an entirely different case to infer from this intention that such protection must be absolute and to establish conditions for such protection which are more rigorous than those contained in the relevant statutes. Congress chose to embody its protection in the form of valuation on the basis of like or similar American products. The key to this protective scheme is the likeness or similarity of the American product and not the price, whether it be high or low. The price of the American product enters into consideration solely insofar as it provides evidence of likeness or similarity. Mutual Supply Co. v. United States, 9 Cust.Ct. 667, Reap.Dec. 5745 (1942), aff'd 14 Cust.Ct. 291, Reap.Dec. 6086 (1945).

It appears logical that a price close to that of the importation may, together with other factors, be a sign of likeness or similarity. We do not see how a much higher price can logically be considered as evidence of any greater likeness or similarity. When substantially similar American products are available for use in determining American selling price the use of the highest priced article, in the absence of a showing of a clear statutory direction, would appear to be at variance with the ascertainment of the most similar article.

In sum, it appears that the degree of protection which plaintiff demands is not to be found in the law. In consequence it would seem that the place to seek it is in the legislature and not in the court. It is entirely appropriate that the matter of increased protection for plaintiff, replete as it is with considerations of public policy regarding protection of American industry, international trade, and desirable levels of competition, should be ultimately resolved by Congress.

The above discussion has assumed for its purposes that the shoes offered by plaintiff are indeed similar to the importation and otherwise meet the requirements of articles used for American selling price purposes. As noted previously, however, such an assumption remains open to question and would be more thoroughly examined did not our conclusions eliminate the need for further consideration of these points. Since plaintiff has clearly failed to show that the appraised value found by the appraising official was incorrect, it has failed to satisfy the first and most basic portion of his burden and his appeal for reappraisement must be rejected.

In light of the above, I make the following findings of fact:

1. This appeal for reappraisement was duly filed by an American manufacturer pursuant to the provisions of section 516(a) of the Tariff Act of 1930, as amended.

2. The merchandise involved herein consists of a woman's rubber soled tennis shoe of a type described in Presidential proclamation 2027, 63 Treas.Dec. 232, T.D. 46158, and exported from Japan on or about May 6, 1966.

3. The merchandise was appraised on the basis of the American selling price of a rubber soled tennis shoe manufactured by the Bata Shoe Company of Belcamp, Maryland.

4. That on or about the date of exportation, the American selling price of the shoe manufactured by the Bata Shoe Company was $1.85 per pair, less 6 percent.

5. Said shoe is similar to the imported shoe.

6. No other shoe has been shown to be more similar to the imported shoe.

I therefore make the following conclusions of law:

1. The presumption of correctness attaching to the appraisement has not been overcome.

2. The proper basis of appraisement for the merchandise in issue is American selling price as defined in section 402a(g) of the Tariff Act of 1930, as amended.

3. Said American selling price is represented by the appraised value.

Judgment will issue accordingly.