**CONVERSE RUBBER COMPANY**

v.

**UNITED STATES (Mitsubishi International Corp., Party-in-Interest).**

**UNITED STATES (Mitsubishi International Corp., Party-in-Interest)**

v.

**CONVERSE RUBBER COMPANY.**

**Reappraisement R67/10315; Entry No. 53182.**

United States Customs Court, Second Division, Appellate Term.

June 24, 1971.

**494**

11716 (1970),[1] and which covers an appeal for reappraisement filed by an American manufacturer. The merchandise consists of rubber soled shoes with canvas uppers which were appraised on the basis of American selling price of a like or similar shoe pursuant to the provisions of section 402a(g) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165.

 The parties agree that the shoe manufactured by Bata Shoe Company and received in evidence as plaintiff's exhibit 2 is like or similar to the imported shoe, plaintiff's exhibit 1, and that the appraised value of $1.85 less 6 percent represents the American selling price of said exhibit 2. In addition, the parties have agreed that the imported footwear is identified on the so-called "final list" published by the Secretary of the Treasury, T.D. 54521, and that American selling price as provided for in section 402 a(g), *supra*, is the proper basis of appraisement. It was further agreed by and between counsel for the respective parties that plaintiff below has met all the jurisdictional requirements of section 516(a), Tariff Act of 1930, as amended, necessary for the filing of an American manufacturer's appeal. Plaintiff below has also agreed that exhibit 2, chosen by the appraising official for the purpose of this appraisement, is similar to the imported shoe, exhibit 1, and meets the statutory requirements for American selling price.

The pertinent statutory provisions involved are as follows:

Section 336(a) of the Tariff Act of 1930, as amended:

(a) *Change of Classification or Duties.*—In order to put into force and effect the policy of Congress by this Act intended, the commission (1) upon

Lamb & Lerch, New York City (Richard J. Kaplan and David A. Golden, New York City, of counsel), for American manufacturer.

L. Patrick Gray, II, Asst. Atty. Gen. (Susan C. Cassell, New York City, trial attorney), for the United States.

Lane, Young & Fox, New York City (James G. McGoldrick and William H. Fox, New York City, of counsel), for party-in-interest.

Stitt, Hemmendinger & Kennedy, Washington, D. C. (Noel Hemmendinger, Washington, D. C., of counsel), amicus curiae.

Before RAO, FORD, and NEWMAN, Judges.

FORD, Judge:

The case at bar is an application for review of the decision and judgment of the trial court which was reported in Converse Rubber Company v. United States (Mitsubishi International Corp., Party-in-Interest), 64 Cust.Ct. 779, R.D.

---

1. Party-in-interest has filed a cross-application for review on the question of the exclusion of testimony of certain witnesses offered by it.

request of the President, or (2) upon resolution of either or both Houses of Congress, or (3) upon its own motion, or (4) when in the judgment of the commission there is good and sufficient reason therefor, upon application of any intereted party, shall investigate the differences in the costs of production of any domestic article and of any like or similar foreign article. In the course of the investigation the commission shall hold hearings and give reasonable public notice thereof, and shall afford reasonable opportunity for parties interested to be present, to produce evidence, and to be heard at such hearings. The commission shall report to the President the results of the investigation and its findings with respect to such differences in costs of production. If the commission finds it shown by the investigation that the duties expressly fixed by statute do not equalize the differences in the costs of production of the domestic article and the like or similar foreign article when produced in the principal competing country, the commission shall specify in its report such increases or decreases in rates of duty expressly fixed by statute (including any necessary change in classification) as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total increase or decrease of such rates of duty exceed 50 per centum of the rates expressly fixed by statute.

(b) *Change to American Selling Price.*—If the commission finds upon any such investigation that such differences can not be equalized by proceeding as hereinbefore provided, it shall so state in its report to the President and shall specify therein such ad valorem rates of duty based upon the American selling price of the domestic article, as it finds shown by the investigation to be necessary to equalize such differences. In no case shall the total decrease of such rates of duty exceed 50 per centum of the rates ex-pressly fixed by statute, and no such rate shall be increased.

Section 402a(g) of the Tariff Act of 1930, as amended:

(g) *American Selling Price.*—The American selling price of any article manufactured or produced in the United States shall be the price, including the cost of all containers and coverings of whatever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for delivery, at which such article is freely offered for sale for domestic consumption to all purchasers in the principal market of the United States, in the ordinary course of trade and in the usual wholesale quantities in such market, or the price that the manufacturer, producer, or owner would have received or was willing to receive for such merchandise when sold for domestic consumption in the ordinary course of trade and in the usual wholesale quantities, at the time of exportation of the imported article.

There is presented in this case a novel legal theory which differs from the ordinary principles contested in American selling price cases, such as the propriety of utilizing American selling price, the likeness or similarity of the domestically produced article or the price of said domestically produced article. All of these have been agreed upon as to exhibits 1 and 2 as indicated, *supra.* The American manufacturer, plaintiff below, contends notwithstanding this agreement, that the appraised value is incorrect and appraisement should have been made at the American selling price of $3.20 less 2 percent which is represented by the price of certain rubber soled tennis shoes manufactured by B. F. Goodrich Footwear Company and United States Rubber Company. It is contended that an appraisement at the price closest to the price of the imported article by virtue of the following guidelines published in 31 Fed-

eral Register 2393, February 4, 1966, is erroneous:

Department of the Treasury
Bureau of Customs
[332.1]

## APPRAISEMENT OF FOOTWEAR SUBJECT TO AMERICAN SELLING PRICE

### Notice of Adoption of Proposed Guidelines

There was published in the FEDERAL REGISTER of August 19, 1965, a notice of proposed action, incorporating certain guidelines to be used in appraising imported footwear on the basis of American selling price. These guidelines proposed to instruct appraising officers as follows:

Imported products subject to appraisement on the basis of American selling price by virtue of section 336 of the Tariff Act of 1930, as amended, are required to be appraised at the American selling price of the product manufactured in the United States which is like or similar to the imported product. Customs officers to whom the functions of appraising officers have been delegated shall have the function of selecting the product manufactured in the United States which is like or similar to such an imported product. In carrying out that function, such officers shall use all reasonable ways and means to select the product manufactured in the United States which in their opinion is like, or most similar to the import in physical characteristics, such as appearance, durability, quality, construction, workmanship, and finish. If several products manufactured in the United States are found to be approximately equal in similarity on the basis of the foregoing characteristics, the product which is closest in price to the price of the imported article shall be selected as the most similar.

After consultation with affected individuals and organizations, and full consideration of all relevant data, views, and arguments presented, the action proposed by the notice is being adopted.

Customs officers are being instructed to proceed with appraisement of imported footwear dutiable on the basis of American selling price by virtue of section 336 of the Tariff Act of 1930, as amended, on the basis of the proposed guidelines.

[Seal] LESTER D. JOHNSON,
 Commissioner of Customs.

Approved: January 24, 1966.

TRUE DAVIS,
 Assistant Secretary of the Treasury.

It is the position of said American manufacturer, as indicated in a well prepared brief, that from its history and background the American selling price basis of appraisement is for the protection of American industry and that the guidelines dilute the degree of protection which Congress and the President granted to American producers of rubber soled footwear.

The trial court in sustaining the appraised value found there was a failure to establish that the appraised value was incorrect and in so doing made the following observation:

It is one thing to agree that the use of American selling price is designed for protective purposes. It is an entirely different case to infer from this intention that such protection must be absolute and to establish conditions for such protection which are more rigorous than those contained in the relevant statutes. Congress chose to embody its protection in the form of valuation on the basis of like or similar American products. The key to this protective scheme is the likeness or similarity of the American product and not the price, whether it be high or low. The price of the American product enters into consideration solely insofar as it provides evidence of likeness or similarity. Mutual Supply Co. v. United States, 9 Cust.Ct. 667, Reap.Dec. 5745 (1942), aff'd 14 Cust. Ct. 291, Reap.Dec. 6086 (1945).

\* \* \* \* \* \*

In sum it appears that the degree of protection which plaintiff demands is

not to be found in the law. In consequences it would seem that the place to seek it is in the legislature and not in the court. It is entirely appropriate that the matter of increased protection for plaintiff, replete as it is with considerations of public policy regarding protection of American industry, international trade, and desirable levels of competition, should be ultimately resolved by Congress.

The above discussion has assumed for its purposes that the shoes offered by plaintiff are indeed similar to the importation and otherwise meet the requirements of articles used for American selling price purposes. As noted previously, however, such an assumption remains open to question and would be more thoroughly examined did not our conclusions eliminate the need for further consideration of these points. Since plaintiff has clearly failed to show that the appraised value found by the appraising official was incorrect, it has failed to satisfy the first and most basic portion of his burden and his appeal for reappraisement must be rejected.

■ While we basically agree with this observation, we deem it appropriate at this stage to further expand on this theory. We are well aware of the fact that the appraisement involved herein was made in accordance with the guidelines, *supra*, as indicated by exhibits 6D and 6E. We are also aware of the fact that the appraisement herein was made on the basis of "like or similar" merchandise it not being specified which was in fact used. There is likewise nothing in the record to establish that the shoe used, exhibit 2, was selected from two or more "similar" shoes or whether it was the sole shoe under consideration by the appraising officer.

As we read the guidelines, it is only when two or more shoes are found to be similar in the characteristics specified that the appraising officer must select the one closest in price to the imported article.

■ The guidelines with respect to the price closest to the imported article do not appear to apply to a shoe which is "like" merchandise. Again the record is barren of any evidence which would negate the existence of "like" merchandise, A. Zerkowitz & Co., Inc. v. United States, 58 CCPA, C.A.D. 1005 (1970), or that the appraisal was not in fact made on the basis of "like" merchandise. The law is clear that "like" must be used before "similar." Geo. S. Bush & Co., Inc. v. United States, 48 Cust.Ct. 689, A.R.D. 140 (1962). Hoyt, Shepston & Sciaroni v. United States, 38 Cust.Ct. 741, A.R.D. 74 (1957).

In the *Zerkowitz* case, *supra*, the court in discussing the case of Hudson Shipping Co., Inc. v. United States, 43 CCPA 19, C.A.D. 604 (1955), made the following observation:

> The *Hudson* case, therefore, is authority for the proposition that where the appealed appraisement could have been based on any one of a number of different subsidiary facts, the appellant has the burden of establishing the nonexistence of all of those facts. This is so because, as the *Hudson* case points out, the presumption of correctness attaches not only to the determination of the specific subsidiary fact or facts actually found by the appraiser, but also *to the appraiser's valuation*, and the party contesting the appraisement must offer evidence making out at least a prima facie case establishing the nonexistence of all the other possible subsidiary facts the existence of which would support the appraiser's determination. Of course, if the Government submits evidence tending to prove the existence of subsidiary facts supporting the appraiser's determination other than the subsidiary fact or facts actually found by the appraiser, the party contesting the appraisement has, not only the burden of *producing evidence* as to the nonexistence of these facts, but the burden of *persuading* the trial court of their non-existence as well. See generally,

McCormick, Evidence, §§ 306 & 307, pp. 635–639. [Italics quoted.]

We are therefore of the opinion that the American manufacturer has failed to make out a *prima facie* case. The decision of the trial court sustaining the appraised value is therefore affirmed.

In view of the foregoing, it is unnecessary in this decision to consider the argument that the guidelines, *supra*, are illegal, null and void.

■ Since the appraised value has been affirmed, the cross-application for review by the party-in-interest relating to the refusal by the trial court to permit the testimony of certain witnesses offered by said party is moot. C. J. Tower & Sons et al. v. United States, 20 CCPA 364, T.D. 46131 (1932). Said cross-application is accordingly dismissed.

We therefore find as matters of fact:

1. This appeal for reappraisement was duly filed by an American manufacturer pursuant to the provisions of section 516(a) of the Tariff Act of 1930, as amended.

2. The merchandise involved herein consists of a woman's rubber soled tennis shoe of a type described in Presidential Proclamation 2027, 63 Treas.Dec. 232, T.D. 46158, and exported from Japan on or about May 6, 1966.

3. The merchandise was appraised on the basis of the American selling price of a like or similar rubber soled tennis shoe manufactured by the Bata Shoe Company of Belcamp, Maryland.

4. On or about the date of exportation, the American selling price of the shoe manufactured by the Bata Shoe Company was $1.85 per pair, less 6 percent.

5. Said shoe is like or similar to the imported shoe.

We therefore make the following conclusions of law:

1. The presumption of correctness attaching to the appraisement has not been overcome.

2. The proper basis of appraisement for the merchandise in issue is American selling price as defined in section 402a (g) of the Tariff Act of 1930, as amended.

3. Said American selling price is represented by the appraised value.

Judgment will issue accordingly.